THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MATIAS RODRIGUEZ, Defendant-Appellant.

Third District    No. 77-53

Opinion filed May 15, 1978.—Modified on denial of rehearing May 26, 1978.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

Frank X. Yackley, State's Attorney, of Ottawa (James E. Hinterlong and John X. Breslin, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Defendant Matias Rodriguez was tried before a jury in the Circuit Court of La Salle County and found guilty of the unlawful delivery of more than 30 grams of a substance containing heroin in violation of section 401 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1401(a)(1)). At the conclusion of the sentencing hearing

defendant was sentenced to a minimum of 7 years and a maximum of 21 years in the penitentiary. Defendant appeals from that sentence.

At trial the State presented evidence that defendant agreed to sell 500 grams (20 ounces) of heroin to an undercover Illinois Bureau of Investigation agent after numerous conversations in the tavern which defendant owned and operated. The sale took place on September 10, 1976, and was secretly recorded on videotape by police officers who had the scene under surveillance. At defendant's suggestion, the agent left his unlocked car parked across the street from defendant's tavern and went for a ride with defendant while the package of heroin was supposed to be placed in the car. While the two men were gone Humberto Herrera, a friend of defendant's approached the agent's car but did not make the delivery because, he later said, he thought the car was locked. Defendant and the agent again drove away, and this time Herrera put the package in the car. During the automobile ride at the time of delivery, defendant stated that future transactions would be easier after this first one, and that he would sell any amount as long as the money was paid. After returning to his car, the agent verified the contents of the package and then signaled the other officers who arrested defendant. During a subsequent search of defendant's house, police found tape and wrapping paper similar to that used on the heroin package.

According to the agent, during the negotiations that preceded delivery, defendant frequently talked about "his people" in Mexico. For example, on one occasion defendant said that his people in Mexico had moved their laboratory because of police pressure, but any day he would hear from them. The agent told defendant that he wanted to buy three or four kilograms of heroin to take to New York, and defendant agreed to sell that amount. When defendant's supplies were delayed, he arranged for the agent to purchase 500 grams from some friends for $11,500, and defendant furnished the agent with a small sample. At trial defendant testified in his own behalf that the agent had repeatedly asked him for drugs and, to help him out, defendant introduced him to Herrera who was solely responsible for the transaction. According to the agent, the "street value" of the heroin involved here was $100,000 to $150,000.

After defendant's conviction, a sentencing hearing was held. The presentence investigation report revealed that defendant immigrated to the United States from Mexico in 1961, that he became a citizen in 1971, that his 14-year marriage had produced seven children, that he worked as a union carpenter, and that in May of 1976 he purchased a tavern in La Salle on contract, that he has no prior criminal record, that he has a good reputation in the community and is a good family man. He was not able to make bail pending trial, and his family had applied for public assistance while he was in jail. At the close of the evidence and arguments in

aggravation and mitigation, the trial judge commented that defendant was guilty of an extremely serious offense in terms of the large quantity of narcotics and the highly toxic nature of the controlled substance. The court also commented that in order to believe defendant's version of events, it would be necessary to disbelieve the State's witnesses and to conclude that the IBI agent had falsified his written reports and had entered into a conspiracy with Herrera and other friends of defendant to convict defendant of this crime. Instead the judge concluded that defendant must have a "split personality," appearing as a respected citizen of the community and a good family man to his friends and coworkers while participating in the wholesale drug business with criminals. The court stated, "I can't accept the position that he was a mere dupe because his active role in the transaction belies that." The court imposed a sentence of 7 to 21 years in prison.

On appeal defendant asserts that the sentence is excessive in view of his circumstances and that the sentence is disproportionate to that given his accomplice Herrera. We affirm the sentence.

Defendant would have us reduce his sentence on the grounds that a greater than minimum term is excessive for a defendant with no prior convictions and no prior drug involvement, particularly where his history and family life are indicative of early rehabilitation. The mandatory minimum term for a Class 1 felony is four years. (See Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1, and ch. 56½, par. 1401(a)(1).) Defendant says that no one was harmed because none of this heroin reached the streets and that he had not dealt with drugs previously. He cites the supposedly bumbling way the delivery was handled as his own impoverished financial situation as evidence that he was not an experienced dealer. We find these arguments to be totally unpersuasive.

■■ First, defendant is apparently attempting to take credit for keeping this 500 grams of heroin from reaching the unfortunate consumers of such narcotics. We see no merit in such an argument. Second, the experienced narcotics agent testified that defendant's *modus operandi* was the usual method for the delivery of heroin at the wholesale level. Third, the evidence at trial and at sentencing indicated that defendant had a regular source of heroin in Mexico, that he would be able to furnish large quantities in the future, and that he had contact with more than one supplier. Finally, the fact that defendant appears to have little money and few assets is no more indicative of defendant's lack of involvement in the lucrative business of drug trafficking than it is that he has gambled away his profits or put them in a secret Swiss bank account.

■■ Section 411 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1411) provides:

"In determining the appropriate sentence for any conviction under this Act, the sentencing court may consider the following as indicative of the type of offenses which the legislature deems most damaging to the peace and welfare of the citizens of Illinois and which warrants the most severe penalties:

(1) the unlawful delivery of the most highly toxic controlled substances, as reflected by their inclusion in Schedule I or II of this Act;

(2) offenses involving unusually large quantities of controlled substances as measured by their wholesale value at the time of the offense * * *."

Heroin is listed in schedule I of the Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1204(c)(12)), and 500 grams is more than 15 times the 30-gram threshold limit in effect in 1975 for a Class 1 felony. Thus the trial court correctly took into account the large quantity of the drug and the high toxicity of heroin in imposing sentence.

Our supreme court recently reversed a reduction of sentence by the appellate court, and in reinstating the sentence entered by the trial court, stated as follows:

"The trial judge, in the course of the trial and the sentencing hearing, has an opportunity to consider these factors 'which is superior to that afforded by the cold record in this court.' [Citation.] We continue to find that the trial court is normally the proper forum in which a suitable sentence is to be determined and the trial judge's decisions in regard to sentencing are entitled to great deference and weight. We therefore reaffirm our long-standing rule that absent an abuse of discretion by the trial court a sentence may not be altered upon review." *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.

■■ We agree with the State that the Controlled Substances Act was intended to authorize a heavy penalty against large-scale wholesale dealers in heroin and that defendant clearly fits that category. Although no two cases are ever identical as to all their circumstances, we note that a term of 6 2/3 to 20 years was recently upheld for a Class 2 felony conviction involving delivery of 0.5 grams of heroin where defendant had a prior robbery conviction. (*People v. Phillips* (5th Dist. 1978), 56 Ill. App. 3d 689, 371 N.E.2d 1214.) Also, this court has approved a 6- to 18-year sentence in a case involving multiple sales of large quantities of heroin and other narcotics. (*People v. Gama* (3d Dist. 1975), 33 Ill. App. 3d 869, 338 N.E.2d 583.) In our opinion, the sentence imposed, while severe, was not an abuse of the trial court's discretion in view of the large quantity of heroin involved and in view of defendant's role as a connecting link in the chain of supply stretching from Mexico to La Salle, Illinois.

774

■■■ Defendant also contends that he should not have received a more severe sentence than his accomplice Herrera who pleaded guilty and was sentenced to a term of 4 to 4½ years in prison. Defendant suggests that the court may have penalized him for exercising his constitutional right to trial since Herrera is said to have had a prior criminal record and to have been at least as active in the transaction as was defendant. However, disparity of sentences alone does not warrant a reduction of sentence (*People v. Thompson* (1967), 36 Ill. 2d 478, 224 N.E.2d 264), and where the record shows that the sentence was justifiable on the basis of legitimate factors distinguishing the defendant from his accomplice, the sentence will be upheld (*People v. Prater* (4th Dist. 1973), 12 Ill. App. 3d 452, 299 N.E.2d 26). In *People v. Stambor* (3d Dist. 1975), 33 Ill. App. 3d 324, 337 N.E.2d 63, for example, this court recognized that different sentences may be appropriate where co-defendants had different roles in the crime and where other appropriate sentencing factors were different. (See also *People v. Johnson* (3d Dist. 1978), 59 Ill. App. 3d 640.) In the case at bar, the record does not contain much information about Herrera or his circumstances, but there is evidence that defendant was the principal or leader in negotiating and executing the sale of heroin while Herrera was merely an agent or helper. Since the record does provide a basis for imposing disparate sentences on defendant and Herrera, we would not be justified in disturbing the judgment of the trial court.

Accordingly, we affirm the conviction and sentence in this cause.

Affirmed.

ALLOY and SCOTT, JJ., concur.