THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES J. HODGES, Defendant-Appellant.

Third District    No. 77-147

Opinion filed March 14, 1979.

Leonard F. Sacks, of Kankakee, for appellant.

L. Patrick Power, State's Attorney, of Kankakee (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from a sentence imposed on the defendant Charles J. Hodges, following his plea of guilty to two conspiracy counts involving delivery of a controlled substance in violation of section 401(a)(1) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1401(a)(1)). Defendant had pleaded guilty to the conspiracy counts and the State (as a consequence of an agreement) did not prosecute on two delivery counts. Defendant was sentenced to 2 to 6 years in the penitentiary.

Defendant appeals from his sentence only and contends that there were not sufficient distinctions in the record to justify his sentence of 2 to 6

years when his co-defendant, Petko, was sentenced to 1 to 3 years imprisonment.

It is shown by the record that defendant Hodges and his co-defendant Petko were each charged with two counts of conspiracy to deliver a controlled substance and two counts of delivery. Both defendant and the co-defendant pleaded guilty to the two conspiracy charges and the State did not prosecute the unlawful delivery charges. Petko additionally pleaded guilty to unlawful delivery in another case and to a misdemeanor retail theft charge.

The record discloses that an apparent heroin sale took place between an Illinois Bureau of Investigation agent, Jerome Johnson, and the co-defendant Petko on May 20, 1976. Following that transaction, the IBI agent asked to talk to Petko's supplier and was put in contact with the defendant Hodges. The agent talked with Hodges about the sale of a larger amount of heroin than was exchanged on May 20. Hodges told the agent that 5 ounces of heroin would cost more than $5,600. Defendant also said that he would be required to charge at least $1,400 for 1 ounce of heroin because his cost for that amount was $1,200. Defendant Hodges also told the agent, according to the agent's testimony, that he was in the drug business for the money and was not a user of heroin. At the trial, however, Hodges testified that he had been addicted to heroin for nine months but was not aware of his addiction until he went to jail. Hodges said he had snorted the drug through his nose rather than injecting it in his veins. Defendant stated that he had "kicked the habit" during his six-day stay in the Kankakee County jail. Defendant, however, admitted that until he talked to the presentence investigator, he had never told anyone about his heroin habit. Hodges also testified that he had not been engaged in selling drugs until Petko asked him to obtain drugs. He contended that he did not sell the heroin, but only delivered it to Petko. According to Hodges, Petko would give him the money and then defendant would go to Chicago and buy the drugs.

The IBI agent had a second encounter with Hodges on June 3, 1976, at which time Hodges stated that he could not get the 5 ounces of heroin he had promised but that he had 3 ounces. When the agent asked for the 3 ounces, defendant refused, stating that he was afraid of the police and that he would have co-defendant Petko deliver the heroin. The heroin was eventually delivered to the IBI agent by Petko.

It appears from the record, also, that Petko became addicted to heroin in Viet Nam in 1970 and had been on and off the drug for 7 years. At his sentencing hearing, Petko testified that he told Hodges that he had some people who wanted weekly drug deliveries. Petko added that Hodges had told him (Petko) that he would be the middleman and would do the handling.

At the time of sentencing, Petko was on the methadone program of the Threshold drug abuse program. A psychiatrist of that drug abuse program testified (at the hearing in aggravation and mitigation) that Petko had made considerable progress and that he was not taking illegal drugs at the time. The psychiatrist also testified to the change in Petko's motivation, and in his nature and cooperative attitude as well as an improvement in keeping appointments and actively seeking employment.

The drug abuse program's director also testified that random tests of Petko's urine proved negative and that Petko had not used (illegal) drugs from December 1975 until the date of the hearing in February 1977. Defendant and Petko were sentenced, as we have indicated, on March 2, 1977.

At the time the trial court sentenced Petko to 1 to 3 years in prison, the trial court observed that, on the evidence, he concluded Petko was addicted to heroin but was involved in the methadone treatment. He also observed that the offenses involved occurred during the period of time under consideration and that it was indicated that many individuals who were in Viet Nam apparently became addicted to heroin. He also stated that the State's Attorney had pointed out Petko's problem of addiction and that Petko was doing well on methadone at the time of sentencing. The court also stated that the Code of Criminal Procedure would indicate that the court can assess a penalty having regard to the nature and circumstance of the offense and the history and character of the individual involved.

In sentencing defendant Hodges, however, to the 2 to 6 years in prison, the trial court expressed some doubt in noting that defendant Hodges seemed to be contending that he was somewhat addicted to heroin for a 9-month period but then was "cured." The court observed that Petko may have been the "dummy." The court stated further that it appeared strange to the court that Hodges could go to Chicago and find heroin and bring it back to give to Petko and Petko would make the delivery and sale and that Hodges would get the money and that the money would go back to Chicago. The court stated that while there might be some sympathy for a user, there cannot be very much sympathy for those who deliver, supply, lend, sell, or conspire to sell. The court, therefore, denied the petition for probation filed on behalf of defendant Hodges.

Defendant Hodges does not dispute that trial courts may sentence co-defendants differently if there is a basis for disparate sentences but Hodges argues that in the instant case there was no basis for disparate sentences received by him and Petko.

■■ As we noted in *People v. Stambor* (3d Dist. 1975), 33 Ill. App. 3d 324, 326, 337 N.E.2d 63, 65:

"It is appropriate * * * to impose different sentences on codefendants based upon important distinctions which have a basis in the record."

We also noted in the *Stambor* case, the factors which should be considered by the trial court in the sentencing process and, particularly, the role of defendant in committing the crime, as well as the "history and character of defendant, including age, prior record, family situation, employment and other related factors." 33 Ill. App. 3d 324, 326.

■■ The roles played by Hodges and Petko in the instant case resemble the roles played by defendant and the co-defendant in *People v. Rodriguez* (3d Dist. 1978), 59 Ill. App. 3d 769, 376 N.E.2d 460. In that case, defendant also appealed his sentence on the ground that it was longer than the sentence received by his co-defendant. In the *Rodriguez* case, the defendant had negotiated the terms of a sale of 20 ounces to an undercover IBI agent but refused to give the heroin to the agent personally. Instead, that defendant had his co-defendant put the heroin in the agent's parked car while the defendant and the agent drove around. In affirming the disparate sentences in the *Rodriguez* case, we noted (59 Ill. App. 3d 769, 774) that:

"* * * there is evidence that defendant was the principal or leader in negotiating and executing the sale of heroin while Herrera [a co-defendant] was merely an agent or helper."

The evidence shows a similar situation in the instant case, since the undercover IBI agent met with Hodges on two occasions to negotiate the sale of heroin and that Hodges, who refused to deliver the heroin personally, had the drug delivered to the agent through his co-defendant Petko. Defendant claimed he was merely a middleman, getting the heroin from Chicago to Petko and getting the money from Petko to Chicago, but the trial judge, apparently, did not completely credit that story. The fact that defendant was deemed to be the principal while his co-defendant Petko was simply an agent or assistant, was properly determined a distinction sufficient to be the basis of the disparate sentences imposed by the trial court. The court also gave consideration to the fact that Petko was an addict and doubted that Hodges was addicted. We also take note of the fact that our legislature has declared that delivery of heroin by a nonuser to a user is a factor which a trial court may take into account in sentencing. Section 411 of the Illinois Controlled Substances Act states that "[i]n determining the appropriate sentence for any conviction under this Act, the sentencing court may consider * * * (3) the unlawful delivery of controlled substances by a nonuser to a user of controlled substances * * *." (Ill. Rev. Stat. 1975, ch. 56½, par. 1411(3).) The court obviously gave some consideration to the fact that Petko, who was a heroin addict, was making a conscientious effort to get rid of the addiction and to return to society.

The court also could have given consideration to the provisions of section 411(7) where the Act provides that one of the offenses the courts may consider as most damaging and which warrants the most severe penalty is the delivery of controlled substances by a person convicted to someone 3 or more years his junior, since Petko was 9 years younger than Hodges.

The supreme court stated in *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884, that:

> "We continue to find that the trial court is normally the proper forum in which a suitable sentence is to be determined and the trial judge's decisions in regard to sentencing are entitled to great deference and weight."

As a consequence, on the basis of the record in this cause, we find no abuse of discretion by the trial court which would justify altering the sentence of defendant Hodges on review.

A second issue was raised in this appeal which involves a question of whether defendant Hodges or the State should pay for additional reports of proceedings, which were amended at the request of the State. Supreme Court Rule 329, which was made applicable to criminal appeals (insofar as appropriate) by Supreme Court Rule 612, states that:

> "* * * If the record is insufficient to present fully and fairly the questions involved, the requisite portions may be supplied at the cost of the appellant * * *." Ill. Rev. Stat. 1977, ch. 110A, par. 329.

The portions of the record which were omitted by defendant and which were amended (to the record) at the State's request were the reports of proceedings of the plea hearing and the aggravation portion of the sentencing hearing. Without these reports of proceedings, the record would have been insufficient to present fully and fairly the questions involved and, consequently, Rule 329 indicates that the cost, under such circumstances, of supplying those portions, be assessed against defendant. (See *People v. Holman* (2d Dist. 1976), 43 Ill. App. 3d 56, 356 N.E.2d 1115.) It is apparent, therefore, that the record as originally submitted by defendant Hodges was insufficient to fully and fairly present the questions involved in this appeal and, as a result, the cost of supplementing the record should be taxed to defendant Hodges.

For the reasons stated, therefore, the sentence imposed on defendant Hodges in this cause is affirmed and the cost of amending the record, as indicated in this opinion, is taxed to defendant Hodges.

Sentence affirmed and costs of supplementary record assessed against defendant.

STENGEL and SCOTT, JJ., concur.