THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
TIMOTHY DIMMICK, Defendant-Appellant.

Third District   No. 80-178

Opinion filed November 13, 1980.

Robert Agostinelli and Verlin R. F. Meinz, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This is an appeal of the defendant's sentence imposed by the Circuit

Court of Will County. The defendant, Timothy Dimmick, hereinafter referred to as the defendant or Dimmick, was charged by information with the offenses of burglary, theft and escape. He was tried by the court in a bench trial in the Circuit Court of the Twelfth Judicial Circuit, Will County. The court granted the defendant's motion for a directed finding in his favor on the charges of theft and escape, but convicted him of the crime of burglary. He was then sentenced to a term of four years' probation, the first 90 days to be served in jail with credit given for time already served. He appeals and asks this court to vacate the sentence imposed because his co-defendant was sentenced to only three years' probation, with the first 90 days to be served in jail.

Dimmick argues that the disparity between his sentence and his co-defendant's sentence is unjustified and that, therefore, we should reduce Dimmick's sentence to that of his co-defendant.

On December 25, 1979, Dimmick and Robert Kinney broke into the premises of the Sherwood Inn, Inc. In so doing, they set off a silent burglary alarm to which the police responded. While still inside the premises, Dimmick noticed the responding police officer, Ron Zeigler, and "yelled" to Kinney to escape, and Dimmick began to run toward the rear exit of the building. Officer Zeigler ordered the two to halt and, when they failed to obey his order, fired a shot at Kinney. The defendant shouted that he gave up, but after taking four or five steps, he began to run again. Zeigler again ordered him to halt and threatened to shoot. Dimmick stopped and raised his hands. Then he dropped his hands to his waist under his coat and began to run towards an open window. Zeigler fired a second shot and heard Dimmick fall to the floor, but as he approached, Dimmick jumped out the window and fled. Zeigler then turned to Kinney, who had concealed himself in the building and ordered him to surrender, which he did. A search of Kinney's person revealed a roll of pennies in the lining of his coat and coins located on the floor nearby. Meanwhile, Dimmick eluded a second passing officer, but he was eventually arrested after a 45-minute search.

On February 19, 1980, Kinney, pursuant to plea negotiations, agreed to withdraw his plea of not guilty and enter a guilty plea for the burglary charge. As part of this agreement, the State moved to *nolle prosequi* the theft charge, the other charge in the information filed against him. The State offered him a three-year term of probation which he accepted. The court found that Kinney was 20 years old and that he had at least one prior conviction in Georgia when he was 16 years old. The court was unable to determine his exact criminal record or the nature of the one known prior offense. (At Dimmick's trial, his defense counsel informed the court without substantiation that Kinney had served a 3½-year

sentence for burglary in Georgia.) Pursuant to the plea negotiations, the court entered the agreed-upon three-year probation sentence.

The defendant's bench trial for burglary, theft and escape commenced on February 19, 1980. After the State rested, Dimmick moved for a directed finding on all three counts. The trial court granted the motion as to the latter two counts, but denied it as to the burglary count. The court then found him guilty of burglary.

At the sentencing hearing, the court found that at the time of the offense Dimmick was a 23-year-old high school graduate, that he had been employed at his last job for 1½ years, and that he was legally separated from his wife and was paying child support for his two children. The court also noted that while the probation department had not found a previous arrest or conviction record, Dimmick admitted to a six-year-old conviction for possession of stolen property for which he was sentenced to one year of conditional discharge and seven days in jail. The State recommended incarceration because Officer Zeigler was forced to fire his weapon. The defense urged that a three-year term of probation be imposed because of Dimmick's work record, the hardship on his dependents and his co-defendant's sentence. The court apparently found Dimmick and Kinney equally responsible for the burglary, but it sentenced Dimmick to one additional year of probation, noting:

> "Well, while Mr. Dimmick's conduct might well justify his being put in prison, taking into consideration the fact that he was shot and that the co-defendant did everything Mr. Dimmick did, except that the officer missed [Kinney], I am just going to sentence Mr. Dimmick to four years probation, the first 90 days in the Will County Jail."

The defendant does not challenge the propriety of the sentence itself because it falls within the permissible sentencing range for the offense of burglary. (See Ill. Rev. Stat. 1979, ch. 38, pars. 19—1(b) and 1005—6—2.) Instead, he argues that because he is identically situated to his co-defendant in terms of his relative participation in the offense and his rehabilitative potential, the disparate sentence was imposed solely to punish Dimmick for electing his constitutional right to stand trial rather than plead guilty as did Kinney.

■■ A trial court's sentencing decision will not be modified unless defendant affirmatively demonstrates that the court erred when imposing the disparate sentence. (*People v. Godinez* (1980), 81 Ill. App. 3d 547, 401 N.E.2d 658.) This is especially so in the case at bar, because of the substantial similarity already existing between the two sentences. In fact, while we recognize that one additional year of probation infringes upon the defendant's liberty interests protected by the fourteenth amendment

of the United States Constitution, we have found no cases questioning the propriety of disparate probationary sentences. We agree that the sentence of probation should not be arbitrarily imposed.

■■ ■ The defendant first argues that there is no differentiating factor between his co-defendant and himself and that, therefore, similarly situated defendants should be similarly sentenced. (*People v. Steg* (1966), 69 Ill. App. 2d 188, 215 N.E.2d 854.) We have recently reiterated this rule of "even-handed justice" in *People v. Sherman* (1977), 52 Ill. App. 3d 857, 368 N.E.2d 205, and *People v. Godinez* (1980), 81 Ill. App. 3d 547, 401 N.E.2d 658. However, this rule has two important qualifications. A disparate sentence may be supported by either greater relative participation in the offense (*People v. Johnson* (1978), 59 Ill. App. 3d 640, 375 N.E.2d 1027), or lesser rehabilitative potential as evinced by a defendant's more serious criminal record (*People v. Henne* (1973), 10 Ill. App. 3d 179, 293 N.E.2d 172) and relative maturity (*People v. Walker* (1976), 44 Ill. App. 3d 494, 358 N.E.2d 672). For example, we held in *Johnson* that where co-defendants committed armed robbery, the defendant brandishing the weapon is subject to harsher sentencing than is his accomplice. In the case at bar, the trial court found no substantial difference between Dimmick's and Kinney's participation. Thus, Dimmick's disparate sentence would not be justified by his participation in the burglary.

Turning to the second justification for disparate sentencing, lesser rehabilitative potential, we first note that Dimmick's and Kinney's respective criminal records are substantially similar. They each committed one prior property-related offense: Kinney, when 16, served 3½ years for burglary, and Dimmick, when 17, served one year of conditional discharge for possession of stolen property. Clearly, Dimmick's criminal record does not infer a lesser rehabilitative potential and, therefore, does not support the disparate sentence.

This court declared in *People v. Walker* (1976), 44 Ill. App. 3d 494, 358 N.E.2d 672, that the defendant's maturity relative to his co-defendant's may demonstrate a lack of rehabilitative potential and serve as a justification for a disparate sentence. This rationale is in keeping with the theory that more mature criminals require more significant punishment in order to rehabilitate them, whereas juvenile offenders and those younger offenders subject to the criminal law can be treated more leniently. In *Walker*, for example, the defendant was 21 while his co-defendants were 16. This age differential was held to support the disparate sentence. On the other hand, in *People v. Sherman* (1977), 52 Ill. App. 3d 857, 368 N.E.2d 205, we struck down sentencing disparity where the defendant was 21 and his co-defendant who received a lesser sentence was 20. Obviously, no hard and fast rules can be discerned to infer a lack of

relative rehabilitative potential where an older, presumably more mature, defendant is involved. The determination must be made on a case-by-case basis. In the case at bar, we find that Dimmick's age and employment record indicate that he was more mature than Kinney and, therefore, the slightly disparate probationary sentence is justified.

Even assuming, *arguendo*, that Dimmick and Kinney are similarly situated defendants, as Dimmick claims, we hold that the disparate sentence does not punish his election to proceed to trial and thus the sentencing differential is permissible. In *People v. Moriarity* (1962), 25 Ill. 2d 565, 567, 185 N.E.2d 688, 689, our supreme court declared that "[a] defendant in a criminal case should not be punished by a heavy sentence merely because he exercises his constitutional right to be tried before an impartial judge or jury. *United States v. Wiley* (7th Cir. 1960), 278 F.2d 500, 504." This issue arises in two instances: where a single defendant rejects an offered sentence during plea negotiations and then receives a harsher sentence at trial (*People v. Sivels* (1975), 60 Ill. 2d 102, 324 N.E.2d 422) and where a similar defendant receives a greater sentence after trial than did his co-defendant who pleaded guilty (*People v. Martin* (1970), 47 Ill. 2d 331, 265 N.E.2d 685). The same rule has been applied in both situations. In *Martin*, the supreme court stated that "a mere disparity between a sentence imposed on a defendant who stands trial and another one who pleads guilty does not itself necessitate action by the reviewing court. (*United States v. Melendez* (7th Cir. 1966), 355 F.2d 914.) It is the reason for the disparity that is controlling." *People v. Martin* (1970), 47 Ill. 2d 331, 339, 265 N.E.2d 685, 689-90.

There are two instances where the disparity between the sentence rendered at the end of trial and the negotiated sentence constitute punishment of the defendant electing formal trial. The first is where the trial judge's comments indicate that the sole basis for the harsher sentence is because the defendant elected to proceed to trial. (*People v. Moriarity* (1962), 25 Ill. 2d 565, 185 N.E.2d 688.) For example, in *Moriarity*, the trial court was held to have improperly sentenced the defendant because during the trial the court commented to the defendant that had he pleaded guilty when offered the opportunity before trial, he would have received a more lenient sentence. In the case at bar, the trial court did not ask Dimmick to admit his guilt, nor did it offer him a lesser sentence if he did so. (*People v. Moffett* (1977), 55 Ill. App. 3d 939, 371 N.E.2d 364.) Therefore, we conclude that the record fails to directly establish Dimmick's allegation that his disparate sentence was imposed to punish his election to go to trial.

■▮■ It has been recognized, also, that an allegation of a constitutional deprivation of this nature may be shown inferentially by the extreme

disparity between sentences. (*People v. Jones* (1969), 118 Ill. App. 2d 189, 254 N.E.2d 843.) For example, in *People v. Dennis* (1975), 28 Ill. App. 3d 74, 328 N.E.2d 135, the defendant was offered, during plea negotiations, a two- to four-, a two- to five-, or a two- to six-year sentence, which offer he subsequently rejected. At the end of trial, he received a sentence of 40 to 80 years. The court held that " 'a reasonable inference' of a constitutional deprivation may be drawn where a great disparity exists." (*People v. Dennis* (1975), 28 Ill. App. 3d 74, 78, 328 N.E.2d 135, 138.) The rule is absolutely clear, however, that only an extreme disparity warrants an inference of a constitutional deprivation. (See *People v. Dennis* (1975), 28 Ill. App. 3d 74, 78, 328 N.E.2d 135, 138; *People v. Peddicord* (1980), 85 Ill. App. 3d 414, 407 N.E.2d 89.) Furthermore, our supreme court in *People v. Sivels* (1975), 60 Ill. 2d 102, 324 N.E.2d 422, has upheld the propriety of less than extreme disparate sentencing. As long as the sentence imposed is within the allowable statutory range, reasonable dispositional concessions may be made to a defendant who pleads guilty. (*People v. Jackson* (1979), 79 Ill. App. 3d 698, 708, 398 N.E.2d 959, 967.) We do not believe that the State should be collaterally estopped from asking for a reasonably greater sentence for a defendant who stands trial merely because a co-defendant elected not to reveal the details of the offense to the trial court at a formal trial and then received a lighter sentence. On the record, we cannot infer a constitutional deprivation from Dimmick's slightly disparate probationary sentence.

Accordingly, we affirm the sentence imposed by the Circuit Court of Will County.

Affirmed.

SCOTT and STOUDER, JJ., concur.