THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY W. BERGMAN, Defendant-Appellant.

Second District   No. 82—909

Opinion filed January 12, 1984.

Patrick A. Tuite and Cornelia Honchar Tuite, both of Chicago, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Larry W. Bergman, and a codefendant, Paul J. Basista, were charged in an information in count I with unlawful delivery of a controlled substance (Ill. Rev. Stat. 1979, ch. 56½, par. 1401(a)(2)), in count II with unlawful possession with intent to deliver a controlled substance (Ill. Rev. Stat. 1979, ch. 56½, par. 1401(a)(2)), and in count III with unlawful possession of a controlled substance (Ill. Rev. Stat. 1979, ch. 56½, par. 1402(a)(2)), all counts alleging the same transaction in an amount of 30 grams or more of a substance containing cocaine. Basista entered a negotiated plea of guilty to count I and was sentenced to a six-year term of imprisonment. Bergman, who is the only defendant in this appeal, pleaded guilty to count I without any agreement with the State and was sentenced to a 25-year term of imprisonment and fined $200,000.

Defendant, Bergman, appeals contending his 25-year imprisonment term and fine constitute an abuse of sentencing discretion because (1) the sentence is grossly disparate with that of his codefendant, (2) the trial court compared him with defendants in totally unrelated cases rather than his codefendant, and (3) the trial court failed to make sufficient findings of record to support the sentence imposed on him and failed to balance the seriousness of the offense with his potential for rehabilitation.

On May 28, 1981, defendant and his codefendant, Basista, were arrested and charged with the delivery of 30 grams or more of cocaine alleged to have occurred on that day. On August 23, 1982, defendant entered a nonnegotiated plea of guilty to count I, unlawful delivery of more than 30 grams of a substance containing cocaine. Counts II and III were *nolle prossed*. The factual basis which the

State proffered was that agents of the Federal Drug Enforcement Administration (DEA) and deputies from the Du Page County sheriff's office would testify that arrangements were made with Basista for the delivery of a pound of cocaine; that on May 28, 1981, Basista drove his car into the parking lot where the sale was to take place; that defendant was in the passenger seat and subsequently crawled over into the back seat and crouched down; that the DEA agents drove near where the vehicle was parked; that Basista got into the rear seat of the agents' vehicle and was handed a bag containing $33,000 by the agents; that Basista told the agents that the person in his car was the one who had been sitting on the cocaine and had the package; that Agent Collins walked to the car and defendant then drove the vehicle away from the area because he observed a security guard had been watching; that defendant told Agent Collins that the package was in a tennis racket which he handed to Collins; that Collins withdrew a bag containing white powder and was told by defendant it was of good quality and was the same as samples previously received from Basista; that defendant was then arrested and stated he was not a big dealer and asked why they wanted him; and that a later laboratory analysis indicated the white powder contained 453.5 grams of a substance containing cocaine.

At defendant's sentencing hearing on October 8, 1982, DEA agent Richard L. Ripley testified, in addition to events occurring at the time of the delivery, that he had a telephone conversation with Basista on May 26, 1981, in which Basista informed the agent that he was ready to deliver a pound of cocaine from his source who was sitting on it, and the source, in turn, had to meet another person, who was to fly in from out of town, before the deal could be consummated; that defendant was the person sitting on it; that the substance which was seized in this case was 72% pure cocaine; that one pound of 72% pure cocaine had a street value of $140,800 ($2,200 per ounce) when the substance was diluted and cut to four pounds of 18% purity, which was the average percentage of purity the agent encountered in his work; that he had received two prior samples of cocaine from Basista; that Basista was supposed to receive $3,000 for his part in the transaction; and that the agent had no personal knowledge regarding how much money, if any, defendant was going to realize as the result of this cocaine deal.

DEA agent Patricia M. Collins testified that when she entered the vehicle to procure the cocaine, the defendant told her that the cocaine was high quality, was as good as the two samples, and was all his cocaine; and that after his arrest, informed her that the cocaine was Ba-

sista's.

The defendant testified at the sentencing hearing that he was not going to make any money as a result of the cocaine transaction and the deal was totally Basista's; that he had used cocaine for a substantial period of time and that he made deals with various people to cut the price for himself; that Basista was a cocaine user; that he had not used cocaine since his arrest and was convinced that using cocaine was not the thing to do; and that he had never been arrested except for traffic tickets and was always gainfully employed. On cross-examination, when defendant was asked who gave him the cocaine involved in the present case, defendant paused for 30 to 45 seconds before he answered the question at the direction of the court. He replied that he received the one pound of cocaine from Bob Lidinsky; that Bob was a high school friend of his; that he hesitated in answering the question because he did not like saying anything more than he had to about it; that he called Bob to tell him that a guy (Basista) wanted to make a deal; that Bob gave him the pound of cocaine without requiring the defendant to pay for it upon receipt of the substance; that Bob gave him the cocaine without prior payment because he could trust the defendant; that Bob had given the defendant quantities of cocaine previously, and defendant had always paid Bob later; that during the course of a one-year period, Lidinsky gave him cocaine on five or 10 occasions without asking for prior payment; that Bob never offered him anything or threatened him not to reveal his name; and that this was Basista's deal, his customers.

Following arguments of counsel, defendant was sentenced to a 25-year term of imprisonment and fined $200,000. The trial court articulated its reasons for the sentence. The court stressed the large amount of the cocaine delivered, its purity, and its ability to be cut and channeled out to individual street buyers. The court disbelieved defendant's testimony that Basista was the moving party in the transaction, and stated Basista located the customers, but defendant had access to the source of this unusually large quantity. The trial judge also stated she did not believe defendant's testimony that he procured the cocaine without a motive to participate in the profit. The court reasoned this was not a quantity that can reasonably be viewed as a casual delivery by a naive distributor as evidenced by defendant's testimony that the supplier entrusted him with this quantity without collateral. The court concluded that defendant's reliability as a transmittal agent was well-established with his supplier and he sold cocaine with a profit motive. Finally, the court stated the reason for imposing the substantial fine was to remove the profit motive.

Following imposition of the sentence, the defendant later filed a post-trial motion to vacate his conviction and a motion to reduce the sentence. Both were subsequently denied. At the hearing on the motion to reduce his sentence, it was stated that Basista was sentenced to a six-year term of imprisonment on his plea of guilty to the same offense before the same judge. The prosecutor revealed that Basista, in plea negotiations, received substantial leniency based on his willingness to cooperate in general with regard to drug enforcement and specifically with regard to the prosecution of defendant, who at the time, had not entered a plea of guilty. The prosecutor characterized defendant as the "dealer" and Basista as the contact or "straw man" in this delivery. It was represented to the court that neither man had a prior record, and presentence investigation reports for both are in this record. The salient points of both reports are that Basista is 25, defendant is 31, both are married with one child, both have employment in the past although defendant has a more steady work record, and both received generally favorable evaluations from the reporting probation officer. Upon her denial of the motion to reduce sentence, the trial judge remarked on the different involvement of the two in the cocaine transaction, the cooperation of Basista who was willing to testify against defendant, and the negotiated plea by Basista. The court also commented on how this transaction differed from other cases it had heard and reflected on the charges and sentences in several cases.

We review first defendant's contention that the trial court erred in supporting a grossly disparate sentence on defendant by comparing him with defendants in totally unrelated cases, rather than with his codefendant, Basista. In this regard, defendant refers to comments about sentences in drug cases for other defendants in her court made by the trial judge at the post-sentencing hearing in denying his motion to reduce his sentence.

The remarks of the trial court about other prior cases before her were made at the hearing on the motion to reduce defendant's sentence and after arguments by defendant's counsel and the prosecutor. It is further clear from the record of that hearing that defendant's counsel first presented and argued the question of disparity in the defendant's sentence with Basista's. Subsequently, the trial judge pointed out her reasons for the difference in sentence between the two codefendants here, stressing the plea-bargained cooperation of Basista, the degree of involvement, and the quantity and purity of the cocaine in this transaction. The court then mentioned that this was a Class X felony with a mandatory minimum sentence of six years. The

court then briefly reviewed three other narcotics cases in which she had imposed the mandatory minimum sentence in two, and a sentence of eight years in the other. One was a case of possession of two ounces of cocaine, one a case of delivery of two ounces of cocaine by one who received no money from the transaction, and one a case of delivery of two ounces of cocaine by one who participated in the profits of the sale. The court then reiterated the quantity and purity of the cocaine in this transaction, and the impact if it had reached the street in smaller quantities.

■ We conclude that the trial judge's remarks were clearly directed to the difference in sentences it had previously imposed on defendant and Basista. The references to other defendants in separate cases appears to have been made only to illustrate that a distinction in the severity of a sentence must be made between one who delivers cocaine of high quality in a large quantity with a profit motive, such as here, from those who possess or deliver a smaller "street" quantity. In the context in which the trial judge made these comparisons, we find no error was committed.

Next, defendant contends that the trial court abused its discretion in imposing grossly disparate sentences on the two codefendants whose participation in the crime, prior records, and potential for rehabilitation were the same.

Although an arbitrary and unreasonable disparity between the sentences of codefendants who are similarly situated is impermissible, the mere fact that one defendant receives a substantially longer sentence than another does not, by itself, establish a violation of fundamental fairness. (*People v. Kline* (1982), 92 Ill. 2d 490, 508, 442 N.E.2d 154; *People v. Godinez* (1982), 91 Ill. 2d 47, 55-56, 434 N.E.2d 1121.) A disparity in sentences between codefendants will not be disturbed where it is warranted by differences in the nature and extent of the concerned defendants' participation in the offense (*People v. Godinez* (1982), 91 Ill. 2d 47, 55-56, 434 N.E.2d 1121), by differences in the criminal records of the participants (*People v. Kline* (1982), 92 Ill. 2d 490, 508, 442 N.E.2d 154; *People v. Cook* (1983), 112 Ill. App. 3d 621, 623, 445 N.E.2d 824), by a defendant's greater relative maturity (*People v. DeWaele* (1981), 98 Ill. App. 3d 636, 637, 424 N.E.2d 876; *People v. Dimmick* (1980), 90 Ill. App. 3d 136, 139, 412 N.E.2d 1150), or by a defendant's greater rehabilitative potential. See *People v. Godinez* (1982), 91 Ill. 2d 47, 54, 434 N.E.2d 1121; *People v. Jackson* (1979), 79 Ill. App. 3d 698, 708, 398 N.E.2d 959.

■ Moreover, it is proper for a trial court to grant leniency in sentencing a defendant who by his plea ensured prompt and certain

application of correctional measures to him, acknowledged his guilt and showed a willingness to assume responsibility for his conduct, and cooperated in the successful prosecution of other offenders. (*People v. Massarella* (1979), 80 Ill. App. 3d 552, 573, 400 N.E.2d 436.) It has been recognized by the United States Supreme Court that the trial court may properly take into consideration, when fixing a sentence, the defendant's willingness or refusal to cooperate with law enforcement officials investigating criminal activity in which he was a participant. (See *Roberts v. United States* (1980), 445 U.S. 552, 63 L. Ed. 2d 622, 100 S. Ct. 1358.) In *People v. Sivels* (1975), 60 Ill. 2d 102, 104-05, 324 N.E.2d 422, our supreme court indicated dispositional concessions may be made to a defendant who pleads guilty, and quoted from the A.B.A. Project on Minimum Standards for Criminal Justice (Standards Relating to Pleas of Guilty sec. 1.8 (1968)), which provides that dispositional concessions may be made by a court to a defendant who pleads guilty and enumerates various considerations which are appropriate. One of those factors is "that the defendant has given or offered cooperation when such cooperation has resulted or may result in the successful prosecution of other offenders engaged in equally serious or more serious criminal conduct." Standards Relating to Pleas of Guilty sec. 1.8(a)(v) (1968).

In the instant case, we agree with the defendant's contention that he and Basista had the same criminal record which was devoid of arrests or convictions, and relatively the same personal histories. There are two other significant factors relied on by the trial court, however, which must be examined to determine whether they support the disparity in sentences.

At the time sentence was imposed on defendant, the trial judge emphasized the large amount of cocaine sold, its purity, and its street value when cut and channeled out to street buyers. The court specifically disbelieved defendant's testimony that Basista was the moving party in the transaction, and found that Basista simply located the customer and defendant had access to the source of the unusually large quantity of cocaine. Finally, the court reasoned that defendant acted from a motive to participate in the profit and his reliability as a transmittal agent was well established with his supplier because he was entrusted with this large quantity of cocaine without collateral.

At the hearing on the motion to reduce the sentence wherein the disparity in sentences was first raised, the trial judge again pointed out her belief that there was a difference in the involvement in the transaction between Basista and defendant. While defendant argues on appeal that Basista's role was equal to or possibly greater than

defendant's, we do not agree with that contention.

From our careful review of the record of the factual basis for the plea of guilty and the sentencing hearing, we conclude that the trial judge's findings in that regard were warranted and supported in the record. The court disbelieved defendant's testimony that Basista was the moving party and that defendant did not have a motive to participate in the profit. Credibility assessments are the peculiar prerogative of the trier of fact. (See *People v. Kline* (1982), 92 Ill. 2d 490, 505, 442 N.E.2d 154.) Where a difference exists in the roles played by defendants in a drug transaction, a valid basis is found to warrant disparate sentences for the offenders. *People v. Hodges* (1979), 69 Ill. App. 3d 113, 115-17, 387 N.E.2d 29; *People v. Rodriguez* (1978), 59 Ill. App. 3d 769, 774, 376 N.E.2d 460.

The other factor for the difference in sentences emphasized by the trial judge at the hearing on the motion to reduce the sentence was the negotiated plea by Basista and his commitment to cooperate with DEA authorities and willingness to testify against defendant. Although defendant has not furnished us with a record of the negotiated plea of guilty and sentence proceedings for Basista, it is apparent from the prosecutor's unobjected-to comments at the hearing on the motion to reduce sentence that Basista in plea negotiations received substantial leniency in his sentence based upon his willingness to cooperate generally in drug enforcement and specifically with regard to prosecution of defendant who at the time of Basista's promised cooperation had not entered a plea of guilty. While defendant contends that he, too, should be given some consideration in his sentence because he pleaded guilty and gave information about his supplier at the sentencing hearing, the court below could properly consider that Basista's willingness to testify against defendant may have, in part, induced the guilty plea by defendant, and defendant's identification of his supplier came reluctantly on cross-examination pursuant to the order of the trial court to answer the questions about his source.

■ For the foregoing reasons, we conclude that a disparity in the sentences between Basista and defendant was warranted. Defendant, however, also points to the great disparity in sentences as an abuse of discretion. In *People v. Bares* (1981), 97 Ill. App. 3d 728, 423 N.E.2d 538, we recognized that while differences in the degree of participation in the commission of the crime by codefendants and differences in their criminal record may warrant disparate sentences, an extremely disparate sentence must be reduced to be more consistent with that of an accomplice. (97 Ill. App. 3d 728, 737-38, 423 N.E.2d 538.) Although the sentence of imprisonment for defendant was ap-

proximately four times greater than that of Basista, as was the difference in sentences between the codefendants in *Bares*, under the particular facts present in the case at bar we do not find the court abused its discretion by imposing substantially different sentences.

It is evident that Basista's sentence was lower than what it might have been because of his negotiated plea of guilty which included his willingness to assist in drug enforcement and also to testify against defendant. (See *People v. Sivels* (1975), 60 Ill. 2d 102, 324 N.E.2d 422; *People v. Massarella* (1979), 80 Ill. App. 3d 552, 400 N.E.2d 436.) The trial court's finding that there was a difference in participation between defendant and Basista in the transaction is supported by the record. Here, the trial court's conclusion was that defendant was the one who had access to the supplier of a large quantity of very pure cocaine. It cannot be seriously contested that one who is higher up in the chain of drug trafficking deserves a greater sentence. Thus, a disparity between sentences will not be disturbed where it is warranted by differences in the nature and extent of the concerned defendants' participation in the offense. *People v. Godinez* (1982), 91 Ill. 2d 47, 55, 434 N.E.2d 1121.

■ Under the particular facts present here, which we have carefully reviewed, we do not find the disparity in the sentences of imprisonment between Basista and defendant so severe to be an abuse of discretion. It is recognized that a court of review, in considering the appropriateness of punishment, must give great weight to the judgment of the trial court. (*People v. Godinez* (1982), 91 Ill. 2d 47, 55, 434 N.E.2d 1121; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) The concession in the length of Basista's sentence of imprisonment resulting from his negotiated guilty plea and willingness to cooperate, and the significant difference in the participation in this transaction both tend to support the disparity in the two sentences. For these reasons, we find no abuse in the considerable disparity in the sentences of imprisonment.

Finally, we consider the defendant's contention that the trial court abused its discretion when it failed to make sufficient findings of record to support defendant's sentence and failed to balance the seriousness of the offense with the defendant's potential for rehabilitation. This, defendant argues, resulted in an excessive sentence.

Considering first whether the court below failed to comply with section 5—4—1(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1(c)), which requires the trial judge to specify on the record the particular evidence, information, factors in mitigation and aggravation or other reasons that led to her sentenc-

ing determination, we conclude that any such contention raised here for the first time on appeal, where a statement of reasons was not requested at the trial level, is waived. (*People v. Davis* (1982), 93 Ill. 2d 155, 442 N.E.2d 855; *People v. Baker* (1983), 114 Ill. App. 3d 803, 812, 448 N.E.2d 631.) Further, it is apparent from the record that the trial judge did go into considerable detail in articulating her reasons for defendant's lengthy sentence. However, defendant on appeal maintains that the court below failed to comment on the evidence in mitigation.

■ We think it is apparent from our reading of the entire record that the trial court considered factors in mitigation. Moreover, where mitigation evidence is before the court, it is presumed that the sentencing judge considered the evidence, absent some indication, other than the sentence imposed, to the contrary. (*People v. Goodman* (1983), 116 Ill. App. 3d 125, 127-28, 451 N.E.2d 607; *People v. Baker* (1983), 114 Ill. App. 3d 803, 811-12, 448 N.E.2d 631.) Where a sentencing judge articulates factors in aggravation, as in the instant case, a court of review may assume the trial judge properly considered factors in mitigation. *People v. Baker; People v. Bartik* (1981), 94 Ill. App. 3d 696, 701, 418 N.E.2d 1108.

We turn next to the contention that the trial court failed to balance the seriousness of the offense with the defendant's potential for rehabilitation which, defendant maintains, resulted in an excessive sentence. In a sentence determination, the objective of restoring the offender to useful citizenship is to be accorded no greater consideration than that which establishes the seriousness of the offense, and the prime responsibility for striking the proper balance between these two factors rests with the trial court. (*People v. Waud* (1977), 69 Ill. 2d 588, 596, 373 N.E.2d 1.) The sentencing judge is always charged with the difficult task of fashioning a sentence which would strike the appropriate balance between protection of society and rehabilitation of the offender. (*People v. Cox* (1980), 82 Ill. 2d 268, 280, 412 N.E.2d 541.) The trial court is not required to detail for the record the process by which it concluded that the penalty imposed was appropriate. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 493, 431 N.E.2d 344.) However, where on the record before us we are unable to determine on what basis the court fixed a particular sentence, we have found an abuse of discretion by the court in not adequately balancing the seriousness of the offense with the rehabilitative potential of the defendant. *People v. Rosa* (1982), 111 Ill. App. 3d 384, 394-95, 444 N.E.2d 233.

■ It is clear from the record that the trial judge at the sentenc-

ing hearing had before her a presentence investigation report, and heard mitigating evidence from defendant and his attorney. In evaluating the defendant's version of his participation in this offense, she chose to specifically disregard certain aspects of defendant's testimony. Although in pronouncing her reasons for the sentence to be imposed the trial judge focused mainly on the seriousness of the crime of delivery of cocaine and the impact of such a large quantity of high quality cocaine had it reached the level of street sales, we cannot conclude that the court ignored the rehabilitation factor. While it is preferable for the trial judge to more completely discuss the statutory factors in aggravation and mitigation (see Ill. Rev. Stat. 1979, ch. 38, pars. 1005—5—3.1, 1005—5—3.2) which would give a reviewing court better insight into the sentencing determination, the requirement that the court set forth its reasons in the record for a particular sentence imposed does not obligate the judge to recite, and assign a value to, each fact presented in evidence at a sentencing hearing. (*People v. Meeks* (1980), 81 Ill. 2d 524, 533-34, 411 N.E.2d 9.) On this record, we are convinced that the trial judge incorporated all the information provided at the sentencing hearing, which included defendant's rehabilitative potential, in her sentencing decision.

The defendant also raises the contention that the imposition of the 25-year imprisonment term, just five years short of the maximum sentence, and the additional imposition of the $200,000 maximum fine, are excessive, and that we should reduce this sentence pursuant to the authority of Supreme Court Rule 615(b)(4) (87 Ill. 2d R. 615(b)(4)).

The trial judge is normally in a better position to determine the punishment to be imposed, and his decisions in regard to sentencing are entitled to great deference and weight. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) It is not our function to serve as a sentencing court, and we will not substitute our judgment for that of the trial court merely because we would have balanced the appropriate factors differently if the task of sentencing had been ours. (*People v. Cox* (1980), 82 Ill. 2d 268, 280, 412 N.E.2d 541.) It is not the province of the reviewing court to reduce a sentence merely as an act of judicial clemency (*People v. Barber* (1983), 116 Ill. App. 3d 767, 779, 452 N.E.2d 725), and absent an abuse of discretion by the trial court, a sentence may not be altered on review. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

The 25-year term of imprisonment, although severe, was within the statutory framework of from six to 30 years' imprisonment for this Class X felony. The trial judge was properly concerned with

defendant's role and ability to procure a large quantity of very pure cocaine and the potential harm to the many ultimate buyers had the delivery of this cocaine reached the street after being cut for street sales. Even though defendant had no prior record, the trial court sentenced defendant to a substantial term of imprisonment in view of his role as the supplier of a large amount of cocaine. See *People v. Atencia* (1983), 113 Ill. App. 3d 247, 254-55, 446 N.E.2d 1243; *People v. Rodriguez* (1978), 59 Ill. App. 3d 769, 772-73, 376 N.E.2d 460.

We observe that section 411 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1411) expressly provides that in determining the appropriate sentence for any conviction under that Act, the sentencing court may consider certain listed factors as indicative of the type of offenses which the legislature deems most damaging to the peace and welfare of the citizens of Illinois and which warrants the most severe penalties. Two of those factors deemed most damaging are applicable here, *i.e.*: "the unlawful delivery of the most highly toxic controlled substances, as reflected by their inclusion in Schedule I and II of this Act;" and "offenses involving unusually large quantities of controlled substances, as measured by their wholesale value at the time of the offense ***." (See *People v. Rodriguez* (1978), 59 Ill. App. 3d 769, 772-73, 376 N.E.2d 460.) As a further indication of the legislative intent of the Illinois Controlled Substance Act, section 100 provides an express acknowledgement that one of its purposes is to "penalize most heavily the illicit traffickers or profiteers of controlled substances, who propagate and perpetuate the abuse of such substances with reckless disregard for its consumptive consequences upon every element of society; ***." Ill. Rev. Stat. 1979, ch. 56½, par. 1100; see *People v. Childers* (1980), 83 Ill. App. 3d 358, 360-62, 403 N.E.2d 1295.

Where the record reveals that the trial court considered all the relevant factors which the law requires prior to imposing sentence, a substantial term of imprisonment for the unlawful delivery of a large quantity of cocaine is not an abuse of discretion. (See *People v. Atencia* (1983), 113 Ill. App. 3d 247, 254-55, 446 N.E.2d 1243.) Under all the circumstances present here and the express legislative intent quoted above, it would be improper to substitute our judgment for the trial court even if we would have imposed a different sentence had the function been ours. We find the sentence of imprisonment not to be an abuse of sentencing discretion.

The basis given by the trial court for the imposition of a $200,000 fine was "to remove the profit motive from drug trafficking." The statutory provision in effect at the time of the commission of this of-

fense provides for a fine of not more than $200,000. (Ill. Rev. Stat. 1979, ch. 56½, par. 1401(a).) We note that after the date of this offense, and thus not applicable here, section 5—9—1.1 was added to the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—9—1.1). Section 5—9—1.1 provides for a mandatory fine to be levied by the trial court after a person has been adjudicated guilty of certain drug related offenses of "not less than the full street value of the cannabis or controlled substances seized." (See *People v. Ruff* (1983), 115 Ill. App. 3d 691, 693-95, 450 N.E.2d 1369.) The testimony here was that the street value of the cocaine seized was approximately $140,800.

■■ Since this provision requiring a mandatory fine was not law at the time of the commission of this offense, the imposition of the fine here was discretionary and the trial court had the statutory obligation in determining the amount and method of the payment of a fine to consider "the financial resources and future ability of the offender to pay the fine ***." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—9—1(c)(1).) The record does not reveal the financial resources of the defendant other than $1,000 in savings; he is no longer on bond; nor may we reasonably infer from the record what, if any, profits he may have made in the prior drug transactions testified to by him as it relates to his ability to pay the $200,000 fine. Thus, the fine is vacated and the cause is remanded for the limited purpose of conducting a hearing to determine the defendant's ability to pay a fine, and the amount of any fine. See *People v. Morrison* (1983), 111 Ill. App. 3d 997, 998-99, 444 N.E.2d 1144.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed in all respects except for the imposition and the amount of a fine to be determined at a hearing on remand.

Affirmed in part; vacated and remanded in part.

VAN DEUSEN, J., concurs.

JUSTICE NASH, dissenting:

I respectfully dissent. While I find no fault with the general analysis of the sentencing rules and considerations made by the majority, I do not agree with its conclusions that defendant's 25-year sentence was neither excessive or unreasonably disparate from the six-year sentence of codefendant. It seems apparent the trial court gave little or no consideration to the requirement that it balance the seriousness of the offense with defendant's potential for rehabilitation and, in my

view, there are insufficient grounds in this record to support the difference in punishments imposed. Compare *People v. Rosa* (1982), 111 Ill. App. 3d 384; *People v. Bares* (1981), 97 Ill. App. 3d 728.

It is, of course, people who are sentenced, essentially based upon consideration of their good and bad conduct in the past, what they did in the present case and what they may do in the future after completion of sentence. It appears here that the trial court concentrated entirely upon the purity of the drugs involved in the offense to which defendant pleaded guilty; while that is a proper factor to take into account, it should not be considered dispositive.

I would reduce defendant's sentence to 12 years' imprisonment and remand for imposition of a fine.