The People of the State of Illinois, Plaintiff-Appellee, v. James Clark, Defendant-Appellant.

Gen. No. 67–88.

Third District.

December 10, 1968.

Rehearing denied January 2, 1969.

13

Donald A. Henss, of Moline, for appellant.

Richard Stengel, State's Attorney of Rock Island County, of Rock Island, for appellee.

CULBERTSON, J.

A jury in the Circuit Court of Rock Island County found the defendant, James Clark, guilty of the crime of forgery, and he was thereafter sentenced to the penitentiary for a term of not less than two nor more than ten years. On this appeal he contends that he is entitled to discharge because he was not tried within the 120-day period fixed by law, that he was not proved guilty beyond a reasonable doubt, and that various errors deprived him of a fair trial.

On January 14, 1967, defendant and two companions drove from Peoria to Rock Island and visited a number of stores in the latter city where they either cashed, or attempted to cash, several checks. The manager of a store who had refused to cash a check became suspicious and informed the police, to whom he evidently gave a description of the car in which the trio were riding. Soon after, a patrolman stopped the vehicle and arrested its occupants, including defendant. The latter was not tried in

Rock Island County until July 13, 1967, some 180 days later, and it is undisputed that he was continuously in the custody of either Peoria or Rock Island County authorities during that period.

The sequence of the significant events occurring between the dates of arrest and trial was as follows: (1) On January 15, 1967, before any formal action had been taken or completed against defendant, the Rock Island Police Department turned defendant over to the sheriff of Peoria County, where defendant was under indictment for an armed robbery, but requested that he be held for prosecution in Rock Island County; (2) on February 17, during the course of the next regular session of the grand jury, an indictment was returned to the circuit court of Rock Island County charging defendant with the offense of forgery, in that he had knowingly presented to Geifman Food Store, Inc., a check for $97.20 capable of defrauding; a bench warrant issued pursuant to the indictment but was not served on defendant; (3) sometime prior to March 27 the State's Attorney learned in a telephone conversation with the Peoria County sheriff that defendant was to be tried in the latter county on March 27; (4) on March 27 the State's Attorney sent a copy of the bench warrant to the Peoria sheriff intending it as a detainer warrant; (5) on April 19 defendant was returned to Rock Island County; (6) on April 20 he was brought before the circuit court for arraignment, at which time the public defender was appointed as counsel and defendant ordered to plead by May 1; (7) on April 25, the 101st day after his arrest by the Rock Island police, defendant filed a motion for a list of witnesses, confessions, etc. and an order was entered giving the State's Attorney 10 days to comply; (8) on the same date, April 25, defendant filed, but did not call up for hearing, a second motion for a bill of particulars; (9) on May 23, the 129th day after his arrest, defendant filed a motion

15

for discharge on the ground that he had not been tried within 120 days from the date he was taken into custody, which motion was denied on June 16; (10) on motion of defendant, an order was entered June 26 giving him leave to withdraw his motion for a bill of particulars; and (11) on July 13, 1967, immediately prior to the start of his trial, defendant was arraigned and entered a plea of not guilty.

Under section 9 of article II of the Illinois Constitution an accused is accorded the right to a speedy trial. Implementing this constitutional mandate is section 103–5 (a) of article 103 of the Code of Criminal Procedure of 1963 (Ill Rev Stats 1965, c 38, par 103–5(a)), which provides:

> "(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant, by a competency hearing, or by an interlocutory appeal."

This section, as noted by the committee which drafted it, "Codifies Ill Rev Stats 1961, c 38, § 748, *and the Illinois decisions construing it.*" (See Smith-Hurd, Ill Anno Stats, c 38, par 103–5, p 17; emphasis added.) We are here confronted with two matters of construction. First, the intricate question of when the statutory period of 120 days started to run; and second, a determination of whether defendant's motion for a bill of particulars was a delay occasioned by defendant which tolled the running of the 120-day period.

Based upon decisions later to be discussed, it is the contention of defendant that the period commenced on January 14, 1967, the date he was arrested by the Rock Island police. The People, on the other hand, argue that the 120 days started to run on March 27, 1967, the date

16

the copy of the bench warrant was forwarded to the Peoria authorities. And while we have found no decision construing and applying the statute, or its antecedent, under precisely similar facts, it is our belief that People v. Jones, 33 Ill2d 357, 211 NE2d 261, and People v. Stillwagon, 373 Ill 211, 25 NE2d 795, chart the course we must follow.

■ In the Jones case, which was a review of a conviction of armed robbery and assault with intent to kill, the defendants were arrested on June 3, 1961, in connection with a number of crimes totally unconnected with the robbery and assault. On June 10, 1961, the victim of the robbery and assault saw a picture of defendants in a newspaper, came to the police station and signed complaints against them. Subsequently, on June 23, 1961, defendants were indicted for unrelated crimes and these causes were continued from time to time on application of defendants until February 3, 1962, when they were adjudged guilty of murder. While a motion for a new trial was pending in the murder case, an indictment was returned on February 9, 1962, charging defendants with the armed robbery and assault. Thereafter, on February 28, 1962, defendants filed a motion for discharge in respect to the latter indictment on the ground that they had not been tried within 4 months from the date of "commitment," as the statute then provided. (Ill Rev Stats 1961, c 38, par 748.) The motion was denied and, on appeal, the Supreme Court affirmed. In so doing, the court rejected the contention of defendants that their commitment must be regarded as having commenced either on June 3, 1961, the date of their arrest, or on June 10, 1961, the date of the complaints giving rise to the indictment, and held that it was not until the armed robbery and assault indictment was returned on February 9, 1962, that defendants could be considered as having been "committed" for such offenses. Admittedly the

17

present statute speaks of "custody" rather than "commitment," but we fail to see how this change provokes a different construction. The principle we derive from Jones is that the statutory period does not start to run until an accused is confined for the crime for which discharge is sought.

People v. Stillwagon, 373 Ill 211, 25 NE2d 795, concerned an accused who was involved in a holdup in Lake County on August 18, 1936. The proceeds of the robbery were transported into Cook County, whereupon defendant was arrested, and held in custody until November 18, 1936. Although indicted by the Cook County grand jury for larceny, the indictment was stricken with leave to reinstate on November 18, whereupon the defendant was surrendered to the sheriff of Lake County who placed him in the jail of Lake County where he remained until February 8, 1937. The defendant was tried on a charge of robbery. The criminal court of Cook County had jurisdiction to try defendant on the charge of larceny under the statute which provides that where property is stolen in one county of the State and carried into another, the jurisdiction shall be in any county into or through which the property may have passed, or where it may be found. The defendant in that case contended that the four months' period should have started from the first day of his confinement in the Cook County jail, but the court holding adversely said, at page 214: "The only court competent to try defendant for robbery was the court having jurisdiction of the offense,—namely, the circuit court of Lake county. He had been neither indicted nor held in custody in Cook county on the charge of robbery. Since the one court having jurisdiction of the crime of robbery tried defendant within four months of the date of his commitment on this charge, it follows, necessarily, that his right to a speedy trial was not invaded and his motion for discharge properly denied."

18

When the logic and rationale of the Jones and Stillwagon decisions are applied in the instant case, it is our opinion that defendant cannot be considered to have been in custody for the crime for which he seeks discharge, viz., the issuance of a fraudulent check to Geifman Food Store, Inc., until April 19, 1967, the date he was returned to the custody of Rock Island officials from Peoria County; that the 120-day period commenced to run from such date; and that defendant's trial on June 13, 1967, was therefore within the statutory period.

As previously noted, defendant was not arrested by the Rock Island police on January 14 for any particular charge, and when he was turned over to the Peoria authorities on January 15 no formal charges had been made against him in Rock Island county. In particular, he had not not been served with a complaint or warrant in respect to the crime of forgery here involved. It is true that the Rock Island police placed a "hold" or detainer request with the Peoria sheriff, but so far as the record shows this was an oral request which was never acknowledged. What is more, it cannot be said that the request related to the forgery involved in the instant case, inasmuch as he was not indicted for such crime until a month later. Under these circumstances, we believe it emerges clearly that from January 15 to February 17 (the date of the forgery indictment), at least, defendant was in custody for the unrelated crime of armed robbery for which he was being held in Peoria county. Had defendant been confined in the Rock Island county jail when the forgery indictment was returned, we would be compelled under Jones to hold that the statutory period started to run on such date. But since defendant was then in custody in Peoria County for the armed robbery charge, we believe the situation requires us to hold that the statutory period cannot be considered to have started to run until one of two later dates, viz., either March 27, the date upon which

19

a copy of the Rock Island warrant was delivered to the Peoria sheriff, or April 19, the date defendant was returned to Rock Island and confined because of the forgery charge here involved.

Adoption of either of these alternative dates would place defendant's trial within the statutory period, but in our opinion a proper construction of section 103–5 (a) causes April 19 to be the controlling date. Where, as here, a defendant is in custody awaiting trial in one county and there is a charge pending against him in another county, we believe he cannot be deemed to be in custody for the latter offense until such time as the proceedings against him in the first county are terminated and he is then either returned to, or held in custody for, the second county. Any other construction would embarrass and harass the effective administration of criminal justice and would tend to favor an accused who is in custody of one county for a crime, but has formal charges pending against him, for which hold or detainer orders have been placed in several counties. Such an absurd result could not have been intended by the legislature when section 103–5(a) was enacted. Further, it would seem that if one county is to be allowed 120 days in which to prosecute an accused who is in custody for an alleged offense, another county should have an equal amount of time, notwithstanding that its charge against the same accused has been concurrently pending while the case in the first county was being disposed of. Cf. subparagraph (e) of section 103–5, Ill Rev Stats 1965, c 38, par 103–5(e).

The cases upon which defendant relies to support his claim that the 120-day period started to run on January 14, 1967, are distinguishable when their facts are noted. In People v. Fosdick, 36 Ill2d 524, 224 NE2d 242, a criminal complaint was filed in the Circuit Court of Champaign County on January 7, 1964, charging the accused with rape. Subsequent to the filing of the complaint defendant

was arrested in DeWitt County on other charges and, on February 16, 1964, he escaped from the DeWitt County authorities. Thereafter, he was apprehended on March 11, 1964, by F. B. I. agents under a Federal fugitive warrant, and was lodged in the Champaign County jail as the closest Federally approved jail. On the following day, March 12, he was arrested on the Champaign County warrant, taken before a magistrate, and served with a copy of the rape complaint. A dispute over the custody of the accused arose and, as a result, Champaign County voluntarily dismissed its charges so defendant could be returned for trial in DeWitt County, then immediately filed new but identical charges against defendant. Under these circumstances, the Supreme Court held that the accused must be deemed to have been in the custody of Champaign County for the rape on March 12, 1964, the date he was served with a warrant, and that the voluntary dismissal by the Champaign County authorities could not evade the provisions of the 120-day rule. Comparable circumstances did not exist or occur in the present case. Rather, defendant was released to Peoria County at a time when no formal charges of any nature had been made against him in Rock Island County.

In People v. Gray, 83 Ill App2d 262, 227 NE2d 326, an accused was incarcerated in the penitentiary at Menard when, on September 7, 1965, a complaint charging him with armed robbery was filed in Morgan County. A warrant issued on the same date but was not served. On October 26, 1965, it was learned that the accused was in Menard, and Morgan County officials placed a "detainer warrant" with the warden of the penitentiary. However, no further affirmative action was taken until May 25, 1966, when the accused was indicted for the offense charged in the complaint. In that case, unlike the situation here, the State's Attorney of Morgan County could have prosecuted the case with vigor at any time after

21

learning the accused was confined in the penitentiary, a distinction which also existed in other cases advanced by defendant. (People v. Bryarly, 23 Ill2d 313, 178 NE2d 326; People v. Patheal, 27 Ill2d 269, 189 NE2d 309; People v. Swartz, 21 Ill2d 277, 171 NE2d 784.) Here, the State's Attorney knew that defendant was awaiting trial in Peoria and the authorities of the latter county, even if a demand had been made, would not have been required to postpone and delay the Peoria trial by returning defendant to Rock Island County.

 Apart from our conclusion that the 120-day period did not start to run until April 19, 1967, it is our further opinion that delay in the trial was "occasioned by the defendant" when, on April 25, 1967, he filed a motion for a bill of particulars, and thus caused the statutory period to start anew. (Cf. People v. Hamby, 27 Ill2d 493, 190 NE2d 289; People v. DeStefano, 85 Ill App2d 274, 229 NE2d 325; People v. Petropoulos, 59 Ill App2d 298, 208 NE2d 323, affd 34 Ill2d 179, 214 NE2d 765.) The motion alleged that defendant was "unable to prepare his defense properly" unless the People were required to furnish him with certain specifically alleged details. Yet, defendant did not call the motion up for hearing, but withdrew it and proceeded to trial after his motion for discharge had been unsuccessful. Under the circumstances, it is our opinion that the motion must be treated as dilatory in character and as creating a delay in trial.

No evidence was presented for the defense, and facts necessary to a consideration of defendant's claim that he was not proved guilty beyond a reasonable doubt show that defendant and his companions left Peoria having in their possession approximately 30 blank checks which were imprinted with the name of La Star Wig Co., Inc., and its address, and which indicated the drawee bank to be the South Side Trust & Savings Bank of Peoria. One of the trio, who appeared as a witness for the People,

22

testified that they had first driven to several places to procure "phony" identification, and had then proceeded to Rock Island to cash some checks. The check presented by defendant at the Geifman Food Store was made out to "Glen D. Holland" and was purported to have been signed on behalf of the La Star Wig Company by "Ida Lupina." A cashier in the store identified defendant as the person for whom she had cashed the check, and testified that he had endorsed the name "Glen D. Holland" in her presence and had shown her a driver's license to prove he was Holland. The check was never sent through to the bank for collection, but was turned over to the Rock Island police.

■ Janice Miller, bookkeeping manager of the Peoria bank, appeared as a witness for the prosecution and brought with her the signature card of the La Star Company which showed that the account had been closed July 20, 1965, and that "Ida Lupina" had not been an authorized signator to issue checks. Because the witness testified on cross-examination that it was possible for an account to be opened without her knowledge, defendant rationalizes that it is possible there may have been another La Star account and contends that the record does not "truly show" that Geifman's would have been defrauded had the check been put through for collection. We find no merit to this contention. The witness testified that she had charge of all signature cards at the bank, and because of this would have known of a later La Star account if one had existed. Furthermore, proof in forgery cases must often be by circumstantial evidence, (People v. Dauphin, 53 Ill App2d 433, 203 NE2d 166; People v. Church, 366 Ill 149, 7 NE2d 894), and the total circumstances here establish beyond a reasonable doubt that defendant knowingly, and with intent to defraud, made and presented a check capable of defrauding. See: Ill Rev Stats 1965, c 38, par 17–3.

 Defendant next contends that he did not receive a fair trial due to improper remarks by the State's Attorney in his closing argument. Specifically, although no objections were registered in the trial court, it is contended that the prosecutor argued improperly when he told the jury: (1) that the State was not required to sustain an impossible burden; (2) that he represented the People and that it was his function to enforce the law; and (3) that he believed the evidence established defendant's guilt beyond a reasonable doubt. We cannot agree that such argument was improper or that defendant was prejudiced thereby. The prosecutor was correct in his assertion that an impossible burden is not imposed upon the State in order for a conviction to be obtained, and the instructions to the jury fully outlined the extent of the prosecutor's burden in this case. Similarly, it has been consistently held that a State's Attorney may properly describe himself as a representative of the people and dwell upon his responsibility to enforce the law. (See: People v. Miller, 13 Ill2d 84, 148 NE2d 455; People v. Brown, 16 Ill2d 482, 158 NE2d 579; People v. Dean, 78 Ill App2d 2, 223 NE2d 175.) Finally, it is settled that it is within the bounds of legitimate argument for a prosecutor to state he believes from the evidence that an accused is guilty beyond a reasonable doubt if there is in the record a reasonable basis for such belief, (People v. Lawson, 331 Ill 380, 394, 163 NE 149; see also: People v. Williams, 26 Ill2d 190, 186 NE2d 353; People v. Diggs, 81 Ill App2d 361, 225 NE2d 665), and there was, as we have indicated, more than a reasonable basis in this case.

 The trial court, over objections by defendant, admitted evidence concerning the other checks cashed, and attempted to be cashed, by defendant and his companions on the day of their arrest, and also gave an in-

24

struction that such evidence had been received, and could be considered, only for the limited purpose of determining the issues of defendant's identity, motive, design and knowledge. Defendant's contention that the court erred in these respects is also without merit. Countless Illinois decisions establish that evidence of other crimes is properly admissible to prove identity, intent, knowledge, or a common scheme or plan (e. g., People v. Spaulding, 309 Ill 292, 141 NE 196; People v. Shockey, 67 Ill App2d 133, 213 NE2d 573; People v. Marks, 63 Ill App2d 384, 211 NE2d 548), and the evidence complained about was properly received to establish such elements in this case. The same decisions, People v. Spaulding, 309 Ill 292, 141 NE 196, at 303–304, in particular, require us to reject the further contention of defendant that in order for evidence of other offenses to be admissible, it must first be proved beyond a reasonable doubt that an accused committed such offenses. And since we have held that the evidence of other crimes was proper, it logically follows that the instruction limiting its purpose was also proper. Indeed, it would have been error for the court not to have given the instruction. People v. Hagenow, 236 Ill 514, 86 NE 370; 15 ILP, Criminal Law, § 719.

The judgment of the circuit court of Rock Island County is affirmed.

Judgment affirmed.

ALLOY, P. J. and STOUDER, J., concur.