THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE RODRIGUEZ, Defendant-Appellant.

Second District    No. 81-31

Opinion filed May 18, 1982.—Modified opinion filed on denial of rehearing, July 21, 1982.

Mary Robinson and Joel Tiebloom, both of State Appellate Defender's Office, of Elgin, for appellant.

J. Jordan Gallagher, State's Attorney, of Sycamore (Phyllis J. Perko and Nancie S. Hudell, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant was charged by information with two counts of forgery (Ill. Rev. Stat. 1979, ch. 38, par. 17—3(a)(3)). The information specified the forged checks as being Nos. 1527 and 1528 purported to be made by Chicago South Sales Company and drawn on the Bank of Hickory Hills in the amounts of $277.33 and $259.03, respectively. The defendant was convicted by a jury and sentenced to three years' imprisonment by the circuit court of De Kalb County.

Before the commencement of the trial, defense counsel made a motion *in limine* to exclude evidence of "other transactions by the defendant with respect to the depositing or negotiation of other checks or money orders, other than the ones specifically mentioned in the information herein." The defense also moved to suppress a statement given to the police by the defendant. Both motions were denied by the trial judge. The defendant recorded a continuing objection to the use of such evidence of extra-indictment forgeries.

The State's first witness, Janice Herrmann, bank teller at the Sycamore Road Drive-Up facility of the De Kalb Bank, testified that on June 17, 1980, defendant presented two checks—Nos. 1527 and 1528—made by Chicago South Sales Company and drawn on the Bank of Hickory Hills. He asked that $50 be deposited in his account and the rest of the proceeds given to him in cash. Upon checking his balance, the witness testified, she found it to be very low, about $10, and after conferring with her supervisor she declined to cash the checks, advising Rodriguez that the checks would have to be left for deposit until cleared. She testified that he asked to have the checks back and said he would go somewhere else to cash them. Herrmann, becoming suspicious, wrote down the names of the

payees, and the numbers of the checks before returning them to the defendant. As the defendant drove away, she noticed the license number of his car and gave this information to the police. Herrmann testified she had seen the defendant previously at the bank as a customer and if his balance had been sufficient, she would have cashed the checks.

The next witness was Ray Christian, owner of Chicago South Sales Company. He testified that his business, located at 6958 Archer Avenue, in Chicago, had been burglarized on June 4, 1980, and a fire had been set to cover the burglary. He found on inspection that several items were missing, including blank checks in the 1300 through 1500 series. He notified the bank to stop payment on these checks. Christian identified checks Nos. 1527 and 1528 as being among those stolen and that the maker's signatures on the checks were unauthorized. Check No. 1527 was payable to Juanita Rodriguez, check No. 1528 was payable to Reyes Rodriguez, both unknown to Christian. A third check of Chicago South Sales Company, No. 1339, was also introduced into evidence. This check was payable to Ray Rodriguez and had been cashed by the De Kalb Bank. Check No. 1337 of Chicago South Sales Company, payable to Ramon Gaona, was also identified by a De Kalb Bank teller as having been cashed by that bank. Both checks were endorsed by the defendant. Both the payee and the person signing the checks were unknown to Christian.

The State's next witness was De Kalb detective James Kayes. He testified he investigated the attempted cashing of checks Nos. 1527 and 1528 at the De Kalb Bank and in this connection questioned the defendant at his home on June 17. He said the defendant told him he had been asked by his sister-in-law, Juanita, to try to cash these checks for her; that he had attempted to do so in company with his brother, Felix, but had been told that he would have to leave the checks to be cleared, which he refused to do. Detective Kayes did not arrest the defendant on that occasion. He did inform the defendant that he was investigating the attempted cashing of the checks because he had learned that these checks were among a batch of checks which had been stolen in a burglary and payment had been stopped on them. The next day, in company with Detective Jack Garvey, he again questioned the defendant. He said the defendant told him that he and his brother had tried to cash the checks at the De Kalb Bank and after being turned down they tried to cash the checks at another drive-in facility but were again told that they would have to wait for the checks to clear. After that, they went to another bank in Sycamore and were again told that they would have to wait for the checks to clear. Detective Kayes testified that the defendant said that when his brother handed him the checks and asked him to cash them, that his brother had said the checks were the proceeds of an insurance settlement. Afterward, he said, when the defendant returned the checks to his brother, Juan, that Juan told him

that he had gotten the checks in exchange for a vehicle he had sold in Chicago. Kayes testified that the defendant told him he had asked Juan whether the checks were stolen. A statement incorporating these facts and signed by the defendant was identified by Kayes as having been given by the defendant to him at the De Kalb police station.

Kayes went on to testify that on June 24 he had a further conversation with the defendant at the De Kalb police station. This was with reference to checks Nos. 1337 and 1339, also of Chicago South Sales Company. At that time, the defendant told him that he had been at his brother Felix' house when a Mexican who was a stranger to him came to the house and asked for George (the defendant). Upon being told that he was George, the Mexican told him that he was having difficulty getting some checks cashed as he had no identification because he was an illegal alien. He asked the defendant to help him cash the checks and the defendant took the checks to the De Kalb Bank and cashed them and gave the Mexican the proceeds, receiving $5 from him.

The prosecutor then asked Detective Kayes if he had any further conversation with the defendant, to which Kayes replied that on June 30 he had talked to the defendant about another check, a cashier's check drawn on the Continental Bank in Chicago made by Noma World Wide Company. This was another check which had been returned for debit to the defendant's account since payment had been stopped. Kayes related that the defendant had told him that he had been in a tavern with a friend and there had met a Mexican who asked him if he would help to get a check cashed because he was an illegal alien and had no identification. The defendant, Kayes testified, said that he had agreed to do so. He took the check to the De Kalb drive-up facility and cashed it and returned the proceeds to the Mexican stranger, who gave him $10. The check, endorsed by the defendant, was admitted into evidence.

On cross-examination, defense counsel asked Kayes if he had any knowledge or any evidence in his possession indicating the defendant knew the checks he had negotiated were stolen. Kayes answered, "Yes, the fact that he was involved in the cashing of eight stolen checks in the month of June this year." Upon further questioning, Kayes conceded he had no other knowledge indicating that the defendant had known the checks were stolen.

Francisco Moreno, a Chicago resident, also testified through an interpreter about the Noma World Wide check. He said that his apartment in Chicago had been burglarized during the first week in June and that a pay check of Noma World Wide payable to him which he had endorsed was stolen in the burglary. Other items taken in the burglary were described which the victim had never recovered. The assistant cashier of the De Kalb Bank also testified that the Noma World Wide

check had been cashed by that bank and that since payment had been stopped by the maker bank, the De Kalb Bank was out the amount of the check.

Miguel Rivero, resident of Chicago, testified next. He said that an Illinois unemployment compensation check had been stolen when his mail box was rifled sometime in May and that he had reported this to the State unemployment office. The unemployment compensation check was introduced into evidence, and Rivero testified it was apparently the same check intended for him and that he had never received it. He said the endorsement thereon was a forgery. He was eventually reimbursed for the stolen check.

Ross Roland, owner of an establishment known as the "Pizza Wheel," testified that he cashed the Miguel Rivero check after it had been endorsed by the defendant. Roland said the defendant came into the Pizza Wheel with a Mexican Roland did not know. Roland was acquainted with the defendant as a customer. The defendant asked him to cash the check and he said he would if the defendant would "co-sign" it, whereupon the defendant endorsed the check and he cashed it. The check was returned to Roland as a stolen or forged check, and he was out the amount of the check.

Detective Jack Garvey also testified in some detail as to his conversation with the defendant regarding the circumstances surrounding the check cashed at Pizza Wheel. He said the defendant told him he was helping a friend in De Kalb who was moving when a Mexican came up to him and asked if he knew where he could cash a check, that the defendant told him it could possibly be cashed at the Pizza Wheel and, because this Mexican did not have any identification, the defendant went with him to the Pizza Wheel where he was known. He "endorsed" the check at the owner's request and the Mexican gave him $20 for helping him out.

Nancy Rodriguez, the defendant's wife, testified for the defense that the defendant understood simple English, but could not write it. He read English with difficulty. She testified that defendant often helped out his relatives and friends who understood less English than he did. She was aware that he had often assisted Spanish-speaking people to cash checks.

During the jury's deliberations, it sent a note to the trial judge reading:

> "The jury would like to know if portions of the transcript of the trial can be viewed by the jury. Specifically, Detective Garvey's testimony."

There is no record of any consultation between the judge and counsel. The judge replied, "Transcripts not available. Jurors must rely on their collective memories." The jury thereafter returned a verdict of guilty.

In this appeal, the defendant raises two issues: (1) that the defendant

was denied a fair trial by the prosecutor's introduction of detailed documentary and testimonial evidence regarding check forgeries that the defendant was not charged with in the information, and (2) the trial judge's mistaken belief that he lacked discretion to allow the jury to review the testimony upon its request constituted reversible error.

The defendant contends that the evidence of other check forgeries introduced at the trial by the State was both quantitatively and qualitatively excessive and had a cumulative and prejudicial effect on the jury outweighing its probative value. The defendant had made a continuing objection to the admission of evidence of other crimes or offenses following the denial of his motion *in limine* to exclude such evidence.

■■ The State replies that while evidence of extra-indictment offenses is generally inadmissible such evidence can be received where it goes to show notice, guilty knowledge, intent, identity, absence of mistake or *modus operandi*. (*People v. McDonald* (1975), 62 Ill. 2d 448.) However, even where factors are present which justify admitting evidence of other offenses, such evidence must be rejected where its prejudicial effect clearly outweighs its probative value. (*People v. Olson* (1981), 96 Ill. App. 3d 193; *People v. Funches* (1978), 59 Ill. App. 3d 71.) There can be no question that the forgeries of other checks of the Chicago South Sales Company—Nos. 1337 and 1339—were properly brought into evidence here. These checks were part of the batch of checks stolen in the burglary in which checks Nos. 1527 and 1528—the checks specified in the information—were stolen. Since all four checks were involved in the same burglary incident and the forgeries of checks Nos. 1337 and 1339 had probative value in connection with the forgeries of checks Nos. 1527 and 1528 as they related to the question of knowledge and intent, these checks come within the exception to the general rule.

Even conceding, however, that the two Chicago South Sales checks not mentioned in the complaint had sufficient connection with the checks described in the complaint, we think the testimony and exhibits with regard to the Noma World Wide check and the Illinois Unemployment check had prejudicial effect, beyond their probative value. Six witnesses, Moreno, Rivero, the assistant cashier of the De Kalb Bank, Ross Roland, owner of the Pizza Wheel, and the two detectives, Kayes and Garvey, testified about these checks and several exhibits were introduced regarding them. The checks were payable to persons with Spanish surnames. The possession of either of these checks by a Mexican alien, as defendant claimed these persons represented themselves to be, was not by any means so unlikely as to imply the defendant's guilty knowledge as to the origin of the checks. The testimony given by Ross Roland as to the unemployment compensation check was, under the circumstances, not at all probative of the defendant's guilty knowledge about the check he

endorsed at Roland's request. Combined with the testimony of Miguel Rivero, the testimony of the assistant cashier, and the evidence given by the two detectives, Kayes and Garvey, as well as the exhibits, the effect was more prejudicial than probative on the issue of the defendant's knowledge about the checks he was charged with forging. The State in oral argument conceded that the circumstances of these extra-indictment checks were not such as to establish a *modus operandi* and, as noted above, justified the admission of such evidence as being necessary to establish the defendant's knowledge and intent. We reject the argument that the evidence as to the other checks was necessary to refute the defendant's defense that he had no knowledge that the checks were stolen at the time he endorsed them. The Noma World Wide check and the unemployment compensation check had no intrinsic probative value on the question of the defendant's guilty knowledge as to the background of the checks described in the complaint and the testimony of six different witnesses about these checks tended to create a prejudicial inference by repetition.

The State invokes the cases of *People v. Clark* (1968), 104 Ill. App. 2d 12, *People v. Toellen* (1978), 66 Ill. App. 3d 967, and *People v. Mertens* (1979), 77 Ill. App. 3d 791. Both sides cite this court's decisions in *People v. Funches* (1978), 59 Ill. App. 3d 71, and *People v. Olson* (1981), 96 Ill. App. 3d 193, noted above. In *People v. Clark* (1968), 104 Ill. App. 2d 12, the defendant and his companion stole about 30 checks from one source. The evidence showed that they then went to several places to procure fake identity evidence. Using this spurious identity information, the defendant endorsed another person's name and attempted to cash a check. The check was not accepted and the defendant did not receive the proceeds. While the check was not one covered by the indictment, it was obviously a part and parcel of the same crime the defendant was being tried for and the evidence of the attempt to cash the check in question under an assumed name was part of the defendant's *modus operandi* and justifiably admitted as evidence in the case. That case is not apropos to the one considered here. In this case, the defendant used his own identity, and neither the checks in question nor the circumstances of the negotiation had any connection with the charged offenses. *People v. Toellen* (1978), 66 Ill. App. 3d 967, is not in point. In that case, the evidence of other crimes was *not* admitted by the trial court and the State relies on dicta in the case to the effect that evidence of other crimes could properly have been admitted in the trial, since it tended to establish the defendant's *modus operandi*. As we noted above, the State in the case at bar conceded that there was not sufficient similarity in the circumstances of the extra-indictment offenses to those surrounding the forgeries noted in the information to justify the challenged evidence on the ground of the

*modus operandi* exception. Nor, in our opinion, is *People v. Mertens* (1979), 77 Ill. App. 3d 791, pertinent here. That case was an indictment for possession of stolen goods. The issue was whether the defendant knew the property was stolen. All the property in question was in one house in the possession and control of the defendants. The amount of such property was so great that it was found by the court to be probative as to the defendants' knowledge and intent. The sheer volume of the stolen property in the defendants' possession was a probative fact in that case. We do not regard *Mertens* as apposite to the case at hand.

In the instant case, the evidence uncovered by the police indicated that the Chicago South Sales checks had been stolen by a member of a Chicago gang in a burglary and passed to the defendant's brother—who did not live with the defendant—in a transaction in Chicago which he said involved an automobile. The Noma World Wide check was apparently stolen by an individual burglar. It was payable to a Mexican payee and was passed off by a Mexican posing as an illegal alien whom the defendant met in a local bar. The Illinois unemployment check was stolen from an entirely different location in Chicago and was also payable to a person with a Mexican name and was likewise presented to the defendant by a person posing as a Mexican alien and was cashed at a pizza restaurant as a favor to the defendant who was a customer of the owner of the restaurant. These diverse circumstances can by no means be likened in their probative effect to the overwhelming inference created by the 400 stolen items found in the possession of the defendants in *People v. Mertens* (1979), 77 Ill. App. 3d 791.

As in *People v. Funches* (1978), 59 Ill. App. 3d 71, the issue here is not whether there was too much evidence, but whether there was too much *nonprobative* evidence, thus befogging the charges on which the defendant was actually being tried, with testimony having a cumulative effect which may have turned inference into evidence in the minds of the jurors.

We think the evidence of other conduct suggesting forgery exceeds the permissible bounds in this case. The State asserts that a question of defendant's intent was raised by his statement to the police that he did not know the checks were stolen until they were rejected by the drawee banks. However, the defendant did not testify at the trial and no such evidence was necessary for impeachment purposes. The Noma World Wide and the Illinois unemployment checks in no way clarified or confirmed the defendant's intent or guilty knowledge in regard to the Chicago South Sales checks. The detailed testimony of other witnesses, Moreno, Rivero and Roland, about these checks, merely served to raise an inference as to the defendant's propensity to negotiate stolen checks—a purpose not permissible.

Because we think the issue of the defendant's guilt as to the charged

offenses was obscured by the evidence of other crimes, we reverse the defendant's conviction and grant a new trial.

We do not find it necessary to reach the second issue posed by the defendant with regard to the trial court's refusal to answer the jury's note to it requesting a transcript of certain evidence. We do not anticipate that this same issue will arise again at a new trial.

The judgment of the circuit court of De Kalb County is reversed and the cause remanded for a new trial consistent with the views expressed herein.

Judgment reversed; remanded for new trial.

REINHARD and VAN DEUSEN, JJ., concur.