THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PERCY BAKER, Defendant-Appellant.

Second District   No. 81—937

Opinion filed April 25, 1983.

G. Joseph Weller and Michael F. Braun, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis Schumacher, State's Attorney, of Oregon (Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of Elgin, and John X. Breslin and Gary G. Gnidovec, both of State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

An Ogle County jury found defendant, Percy Baker, guilty of burglary (Ill. Rev. Stat. 1981, ch. 38, par. 19—1(a)), on October 13, 1981; the circuit court sentenced him to a 14-year extended-term sentence in the Department of Corrections. On appeal, defendant raises the following issues: (1) Whether the trial court erred in admitting evidence insinuating defendant was involved in other crimes; (2) whether the trial court erred in sentencing defendant to an extended term based

upon a prior conviction where the record does not indicate whether that conviction was the result of a trial or a guilty plea, and; (3) whether the trial court abused its discretion in imposing the maximum extended-term sentence. We note that no post-trial motion appears in the record.

Defendant's burglary conviction arose from the burglary of the Travis' residence. The evidence adduced at trial, circumstantial in nature, established that on July 9, 1981, Mr. and Mrs. Travis returned home at 4:30 p.m. Mr. Travis went to the door of his house and discovered it to be unlocked. He entered the home, set his lunch bucket in the kitchen, and went back outside to commence work on certain chores. He saw a black man walking down the road coming from a bridge east of their hog house. He found the presence of a black man unusual, but could not identify defendant at trial as this man. Mr. Travis then returned inside. In the bedroom he discovered that his wife's "owl" bank had been cracked open and half-dollars were scattered on the bedroom floor; nothing else appeared to have been disturbed. He also found a pamphlet on the floor which gave instructions on the use of a specific cleaning product.

Meanwhile, Mrs. Travis had commenced her outdoor chores without entering the house. A black man approached her, identified at trial as defendant, carrying a spray bottle and a blue portfolio, who attempted to sell a cleaning product to her. She went inside to ask her husband about the purchase and discovered the half-dollars on the bedroom floor and the pamphlet which she had never seen before. Ed Travis, their son, testified that although no evidence of damage to any windows or doors existed, he discovered his key ring missing containing a key to the house which he had left outside in his truck.

Deputy Darrell Cash of the sheriff's office arrived at the Travis' residence. Cash looked at the pamphlet identifying Austin Distributor as the product's distributor. He testified at trial, over defendant's relevancy objection, that the sheriff's office had been receiving complaints about salesmen selling this product. He spoke to Michael Eagle, defendant's supervisor, who gave an address for Austin Distributors, which corresponded to the one written on the pamphlet. He went to that address and found an abandoned building. Again, testifying over defendant's relevancy objection, the witness stated that he attempted to contact Mr. Eagle by phone with no avail.

Meanwhile, defendant, accompanied by six other sales people, went to the Dairy Freeze Too restaurant at around 5:30 p.m. He asked Jackie Jergens, an employee, to exchange half-dollars for paper money but Miss Jergen's supervisor would not allow it. Deputy Cash

and Sergeant Tom Miller arrived at the restaurant. Cash told defendant he wanted to talk about a burglary, and defendant denied any involvement. Cash patted down defendant and discovered and confiscated a pocket knife from defendant's back pocket identified at trial as belonging to the Travis' son. Defendant then ran back to the restaurant and into the bathroom. The police followed him, prevented him from closing the bathroom door, and then heard noises sounding like objects hitting the floor. Overcoming defendant's resistance, the police found a gold diamond ring, a watch, a chain, and another ring on the bathroom floor, identified at trial as items taken from the Travis family. At the restaurant, Cash talked to Mr. Eagle who opened defendant's portfolio, seen earlier by Mrs. Travis when defendant approached her, and found 29 half-dollars and paper currency amounting to $60.

Defendant testified, denying that he burglarized the Travis home, explaining that a group of salesmen were in the general area, and asserting that he gave Mrs. Travis the pamphlet when he attempted to sell the product to her. He stated that another salesman, name unknown, gave him the pocket knife that day and that he went to the bathroom to flush marijuana down the toilet. He explained his possession of the coins by stating that he had sold a gold cross to a man driving down the road earlier that morning and that this man paid him with around $40 worth of loose change. During cross-examination, defendant testified he had worked two days for Austin Distributors.

During closing argument, defense counsel stated:

"He [defendant] might be guilty of working for a pretty shaky company that had a lot of shaky people working for it, but he's not charged with that.

I don't think you should find him guilty because he did work for a shaky company which obviously was a shaky company, obviously shaky people working for them."

In rebuttal, the State said:

"Defense counsel calls this alleged company a shaky company. I think he's doing kind of a service to a business that comes out with a pamphlet, takes six or seven people who are going to solicit for this cleaning liquid and within two or three months later, it's non-existent. Not only were these young people out in some remote part of the country where there are only a few houses to do a business, this business of cleaning, it's in the business of cleaning out the houses in Ogle County. That's the business they're engaged in."

Defendant did not object to this statement at trial.

At the sentencing hearing neither the State nor defendant offered any evidence in aggravation or mitigation. The presentence report revealed that defendant had spent most of his adolescent and young adult life in State-operated facilities and that he had an explosive personality. The report set forth defendant's history of delinquency, which included numerous convictions for various offenses including shoplifting, burglary, theft, retail theft and armed robbery. Following arguments by counsel, the court sentenced defendant to a maximum extended term of 14 years in the Department of Corrections.

Defendant first contends the trial court erred in admitting into evidence what he characterizes as improper evidence of other crimes. (See *People v. Rodriguez* (1982), 107 Ill. App. 3d 43, 437 N.E.2d 441; *People v. Roberts* (1981), 100 Ill. App. 3d 469, 426 N.E.2d 1104; *People v. Gugliotta* (1980), 81 Ill. App. 3d 362, 401 N.E.2d 262.) The evidence complained of consists of the testimony of Deputy Cash, in which the deputy related his endeavors to obtain information about Mr. Eagle and Austin Distributing Company, as well as the subsequent discovery that no such company existed. In addition, defendant complains of the prosecutor's remarks during closing argument that the business which employed defendant was "in the business of cleaning out the houses in Ogle County." Defendant contends this testimony and argument improperly implied that defendant was involved in a company engaged in fraudulent sales and utilized as a "front" for a burglary ring.

We note that although defendant objected at trial to Deputy Cash's testimony on the basis of relevancy and lack of an adequate foundation, no specific objection was made that this testimony constituted inadmissible evidence of other crimes. A specific objection to evidence operates as a waiver of all grounds not specified in the objection. (*People v. Williams* (1981), 96 Ill. App. 3d 8, 420 N.E.2d 710.) Further, defendant failed to object to the State's rebuttal argument, nor did he file a post-trial motion alleging as error the ground now urged on appeal. It is well established that in order to preserve an error for review, counsel must object to the alleged error at trial. (*People v. Beasley* (1982), 109 Ill. App. 3d 446, 449, 440 N.E.2d 961; *People v. O'Malley* (1982), 108 Ill. App. 3d 823, 828, 439 N.E.2d 998.) Further, even where a defendant makes an objection at trial, he nevertheless must file a post-trial motion to preserve the error for this court's review. (*People v. Huckstead* (1982), 91 Ill. 2d 536, 543, 440 N.E.2d 1248; *People v. Jackson* (1981), 84 Ill. 2d 350, 359, 418 N.E.2d 739.) Although the plain-error doctrine (87 Ill. 2d R. 615(a)) allows a

reviewing court to review error not otherwise properly preserved, it does not mandate this court to consider all errors involving substantial rights. (84 Ill. 2d 350, 359, 418 N.E.2d 739.) The doctrine may be invoked where the evidence is closely balanced or where the error was of such magnitude that the accused was denied a fair trial. *People v. Lucas* (1981), 88 Ill. 2d 245, 251, 430 N.E.2d 1091; *People v. Carlson* (1980), 79 Ill. 2d 564, 576-77, 404 N.E.2d 233.

■ For the following reasons we do not believe the plain-error rule is implicated in this case. The evidence against defendant was not closely balanced. In this regard, we note that defendant has not challenged the sufficiency of the evidence against him. Further, any error in the admission of Deputy Cash's testimony and the State's rebuttal argument was not of such a magnitude as to deny defendant a fair trial. The challenged testimony in the instant case does not directly implicate the defendant in the commission of other crimes. At most, it leads to the inference that defendant may have been involved on a short-term basis with an illegitimate company. Where evidence admitted at trial does not directly establish the existence of another crime but only leads to the inference that a defendant may have committed another crime, a reviewing court needs to determine whether the probative value of the evidence sufficiently outweighs its prejudicial impact. (*People v. Allen* (1981), 96 Ill. App. 3d 871, 879, 422 N.E.2d 100; *People v. Price* (1979), 76 Ill. App. 3d 613, 633, 394 N.E.2d 1256; *People v. Coleman* (1974), 17 Ill. App. 3d 421, 431, 308 N.E.2d 364.) While we believe the challenged testimony lacked probative value, we also believe its admission had little prejudicial impact in this case. The testimony did not detail what precise criminal activity was involved, what the offense may have been, or on what basis the defendant was suspected of committing another crime. (See *People v. Allen; People v. Price.*) With respect to the State's rebuttal argument, we do not believe that the comments, although improper, constituted a material factor in defendant's conviction since the record as a whole overwhelmingly supports the conviction. *People v. Post* (1982), 109 Ill. App. 3d 482, 488, 440 N.E.2d 631; *People v. Davis* (1982), 104 Ill. App. 3d 1027, 1033, 433 N.E.2d 1011; *People v. Wallace* (1981), 100 Ill. App. 3d 424, 432, 426 N.E.2d 1017.

Defendant's reliance on *People v. Rodriguez* (1982), 107 Ill. App. 3d 43, 437 N.E.2d 441, *People v. Roberts* (1981), 100 Ill. App. 3d 469, 426 N.E.2d 1104, and *People v. Gugliotta* (1980), 81 Ill. App. 3d 362, 401 N.E.2d 262, is misplaced. In those cases, the improper evidence admitted was direct evidence of another crime rather than inferential evidence. Where evidence of other crimes is direct, it tends to create

a stronger prejudice to the defendant then evidence which is indirect.

Defendant next argues that an extended-term sentence cannot be imposed where the record does not reflect whether the prior conviction resulted from a verdict of guilty or a guilty plea.

Initially, we note that this issue was not brought to the attention of the sentencing court and may be considered waived on appeal. (*People v. Gray* (1981), 95 Ill. App. 3d 879, 885, 420 N.E.2d 856.) However, we feel compelled to address this argument pursuant to Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)).

Defendant's argument derives from the language in section 5—5—3.2(b)(1), which states:

> "(b) the following factors may be considered by the court as reasons to impose an extended term sentence under Section 5—8—2 upon any offender who was at least 17 years old on the date the crime was committed:
>
> (1) When a defendant is convicted of any felony, after having been previously convicted in Illinois of the same or greater class felony, within 10 years, excluding time spent in custody, *and such charges are separately brought and tried* and arise out of different series of acts; ***." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(1).)

Defendant argues that the word "tried" in the statute requires that both the prior and current convictions be the result of a trial. He therefore concludes that because the record does not indicate that the prior conviction resulted from a trial, this cause must be remanded for a determination of this issue. If it is determined that the conviction was the result of a guilty plea then, he argues, he should be resentenced without the imposition of an extended sentence.

■ The Unified Code of Corrections defines "conviction" as follows:

> "Sec. 5—1—5. Conviction. 'Conviction' means a judgment of conviction or sentence entered upon a plea of guilty or upon a verdict or finding of guilty of an offense, rendered by a legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—1—5.)

It is clear that under this section, a "conviction" encompasses judgments or sentences entered after a trial by judge or jury or upon a plea of guilty. Although the word "tried" is not specifically defined under the Unified Code of Corrections, the word "trial" is defined in Black's Law Dictionary as a "judicial examination and determination of issues between parties to an action." (Black's Law Dictionary 1348

(5th ed. 1979).) Under this definition, a proceeding in which a defendant's guilty plea is accepted by the trial court after establishing a factual basis for the plea is a trial. (Accord, *People v. Hargraves* (1975), 28 Ill. App. 3d 560, 563, 328 N.E.2d 639.) Proof that the General Assembly did not intend to distinguish guilty pleas from verdicts of guilty in the extended-term statute is also found in the extended-term statute itself where it states:

> "If the conviction was by plea, it shall appear on the record that the plea was entered with the defendant's knowledge that a sentence under this Section was a possibility." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2(b).)

This provision clearly establishes that a current conviction resulting from a plea of guilty is not exempted from the statute.

We find equally without merit defendant's interpretation of the rationale for distinguishing between convictions based upon guilty pleas and those based upon verdicts of guilty. He contends that such a distinction finds support in the policies of offering an incentive to defendants to plead guilty and of rewarding defendants who by pleading guilty have acknowledged responsibility for their actions, a significant initial step towards rehabilitation. (See *People v. Bodine* (1981), 97 Ill. App. 3d 42, 44, 422 N.E.2d 256.) However, it is clear that the purpose behind the extended-term statute is to increase the punishment of defendants who have exhibited recidivism and an unwillingness to rehabilitate themselves. *People v. Robinson* (1982), 89 Ill. 2d 469, 476, 433 N.E.2d 674; *People v. Hobbs* (1981), 86 Ill. 2d 242, 246, 427 N.E.2d 558.

This underlying purpose explains the General Assembly's use of "and tried" in the challenged statute. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(1).) Charges may be separately brought but tried together or brought together but tried separately. This provision precludes a trial court from increasing a sentence where the charges are not separately brought, not separately tried or arise out of the same set of facts. Clearly, under these circumstances, the purpose of punishing recidivism would not be served. Accordingly, we find irrelevant the distinguishing fact that a prior conviction was based upon a guilty plea, rather than a verdict of guilty.

Finally, defendant contends that the imposition of the maximum extended-term sentence was error because the sentencing judge failed to consider the lack of serious physical harm and the absence of compensation to the defendant. He also claims the court improperly considered the defendant's failure to make a statement to his probation officer relating to his version of the case.

The determination and imposition of a sentence falls within the sound discretion of the trial court which constitutes the better forum for establishing a suitable sentence; hence, a court of review must give great deference to the trial court's determination and will not disturb it absent an abuse of discretion. *People v. La Pointe* (1981), 88 Ill. 2d 482, 492-93, 431 N.E.2d 344; *People v. Cox* (1980), 82 Ill. 2d 268, 275, 412 N.E.2d 541.

Section 5—8—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2) permits a trial judge to sentence a defendant to an extended-term sentence if the judge finds that an aggravating factor specified in section 5—5—3.2 of the Code (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2), is present. In the instant case, the court found that defendant's prior 1980 burglary conviction constituted an aggravating factor warranting an extended-term sentence within the meaning of this section. (See Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(1).) The sentencing court sentenced defendant to 14 years in the Illinois Department of Corrections, the maximum allowed pursuant to this statute. In imposing the sentence, the court stated it considered the evidence received at trial, the presentence report, and the arguments of counsel. In particular, the court noted defendant's lengthy history of delinquency and criminal activity and concluded that defendant lacked any real potential for rehabilitation.

■ Defendant's argument that the sentencing court failed to consider certain mitigating factors is unsupported by the record. Although, the court did not articulate its consideration of these factors on the record, it did clearly state that in reaching a sentencing determination it considered the evidence adduced at trial. The statutory requirement that the trial judge set forth his reasons in the record for a particular sentence (Ill. Rev. Stat. 1981, ch. 38, par. 1005—4—1(c)) does not obligate the judge to recite and assign a value to each factor relied upon. (*People v. Peacock* (1982), 109 Ill. App. 3d 684, 688, 440 N.E.2d 1260; *People v. Lucien* (1982), 109 Ill. App. 3d 412, 420, 440 N.E.2d 899; *People v. Wallace* (1981), 100 Ill. App. 3d 424, 434-35, 426 N.E.2d 1017; *People v. Meeks* (1980), 81 Ill. 2d 524, 411 N.E.2d 9.) Where a sentencing judge articulates factors in aggravation, as in the instant case, a court of review may assume the trial judge properly considered factors in mitigation. (*People v. Bartik* (1981), 94 Ill. App. 3d 696, 701, 418 N.E.2d 1108; *People v. Padilla* (1980), 91 Ill. App. 3d 799, 802, 415 N.E.2d 12.) Furthermore, where mitigation evidence is before the court, it is presumed that the sentencing judge considered the evidence, absent some indication, other than the sentence imposed, to the contrary. (*People v. Fugitt* (1980), 87 Ill. App.

3d 1044, 1046, 409 N.E.2d 537.) We note that defendant failed to mention at the sentencing hearing the mitigating factors which he now claims the court failed to consider. He also failed to request an explanation of the factors considered by the trial court when the trial court imposed the sentence. Where a defendant fails to object at trial level to the lack of articulated reasons for the sentence imposed, that issue is waived on appeal. *People v. Davis* (1982), 93 Ill. 2d 155, 162-63, 442 N.E.2d 855; *People v. Surges* (1981), 101 Ill. App. 3d 962, 971, 428 N.E.2d 1012; *People v. Tyus* (1981), 97 Ill. App. 3d 207, 210, 422 N.E.2d 1148; *People v. Williams* (1981), 96 Ill. App. 3d 958, 965, 422 N.E.2d 199.

We also find no merit in defendant's contention that the sentencing court improperly considered his failure to make a statement to the probation officer. While consideration of this fact in reaching a sentencing determination could possibly be error, there is no indication in the record that such an error occurred here. The court's conclusion that defendant was an unlikely candidate for rehabilitation was based not upon his failure to make a statement, but upon his extensive criminal history. Generally, a sentence which is within the statutory limits is not excessive. (*People v. Edmondson* (1982), 106 Ill. App. 3d 716, 726, 435 N.E.2d 870.) Under the circumstances of this case, we find no abuse of discretion in the sentencing court's imposition of the maximum extended term. *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.

Accordingly, the judgment of the circuit court of Ogle County is in all respects affirmed.

Affirmed.

SEIDENFELD, P.J., and REINHARD, J., concur.