THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ALVIN HANSERD, Defendant-Appellant.

Second District   No. 2—88—0034

Opinion filed October 18, 1989.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Officer, of counsel), for the People.

JUSTICE WOODWARD delivered the opinion of the court:

Defendant, Alvin Hanserd, was convicted of criminal sexual assault under section 12—13(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(1)), after a bench trial before the circuit court in Winnebago County. Defendant was sentenced to an extended prison term of 20 years. The extended term was imposed because the trial judge found the victim to be physically handicapped for the purposes of section 5—5—3.2(b)(3)(iii) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(3)(iii) (superseded by Pub. Act 85—691, §2, eff. January 1, 1988)). We note here that the defendant elected to be sentenced under the version of the statute in effect at the time of the commission of the offense, namely, September 11, 1986. In what appears to be a

case of first impression, the question on appeal is whether the trial court's imposition of an extended sentence was improper.

At the trial, the victim and defendant testified to different versions of the facts. According to the victim she had been awakened by the defendant's telephone call late on the night of September 10 or in the early morning on September 11, 1986. The defendant had previously worked with the owner of the house, Robert Rockwood, in an early morning newspaper-distribution business, and he had met the victim through this employment a couple of times when he would pick up his paycheck. The victim was engaged to Mr. Rockwood's son, Johnathan. She told defendant not to come to the house. After the telephone conversation, she went back to bed, but she did not lock the door to the house. Early in the morning, she heard a noise, got out of bed, saw the defendant's car, and was startled when defendant walked through the living room door. The victim testified that defendant hugged her and pushed her down on the couch, but she protested and said, "Get off of me." He took off her pants, although she tried to push him off her. The sexual assault then occurred.

Testifying on his own behalf, defendant denied forcing any sexual acts upon the victim. He stated that she willingly took part in all sexual acts that occurred between them.

Other evidence adduced at trial indicated that the victim was born deaf and attended the Illinois School for the Deaf for seven years. At the time of the commission of the crime in question she was almost 20 years old and was hearing impaired, but she had the ability to speak with her own voice. In 1986 she had surgery on her mouth which had given her trouble in speaking coherently. It was stipulated into the record that the victim had scored a 76 on the Weschler Adult Intelligence Scale, that her intelligence level was "borderline," being the highest of five levels of subaverage intelligence, and that she was described as educably mentally retarded. Goodwill Industries felt that she had inadequate social skills to sustain employment with it.

During the trial, the victim testified through the use of two interpreters. The first interpreter translated questions posed into sign language. The second interpreter translated the sign language into the idiomatic and conceptual sign language that the victim could understand. The victim would then respond in her sign language, which was then translated by the second interpreter, and then into English by the first interpreter. The State argued that it was virtually impossible to translate exactly word for word from spoken English into

sign language, and thus, two interpreters were needed. (See *People v. Vandiver* (1984), 127 Ill. App. 3d 63, 68.) However, when asked, the victim gave her responses in spoken English. Spoken responses were used when she repeated the words she had told the defendant on the night of the incident and when she affirmed her ability to speak. In addition, the court did not allow leading questions because she had shown no inability to answer questions despite her limited hearing and mentality. The defense waived its objection to the use of the interpreters when the State stipulated that the victim had some speech capabilities and some communication skills.

After the close of the evidence, the court found the defendant guilty. At the sentencing hearing, January 11, 1988, the court asked for the State's position on section 5—5—3.2(b)(3)(iii) regarding a "person handicapped at the time of the offense." The State moved for the imposition of an extended-term sentence. Further, the State alleged that it was "conceivable" that, had the victim possessed normal hearing, she could have heard the defendant earlier and locked the house door before he could have entered and thus, she was impaired from avoiding or preventing the offense.

The court did not comment on this speculation. In finding an extended sentence appropriate, the court below stated:

> "The Court has listened closely to the arguments concerning extended term eligibility and would find that based upon the victim's suffering a permanent speech and hearing disability and a permanent intelligence disability—she was found to be borderline intelligence, educably retarded—the Court would, then, find the victim has suffered permanent and disabling physical characteristics.
>
> The victim was physically handicapped at the time of the offense within the meaning of the statute. That the defendant is eligible for extended term sentencing for the particular offense involved. *I would make these comments towards the extended term; a girl with a hearing disability, speech disability, an intelligence disability, and in the Court's eyes, being preyed on by the Defendant.*" (Emphasis added.)

As stated above, the question on appeal is whether the court below properly imposed an extended-term sentence upon defendant under section 5—5—3.2(b)(3)(iii), which reads in pertinent part:

> "(b) [T]he following factors may be considered by the court as reasons to impose an extended term sentence under Section 5—8—2 upon any offender who was at least 17 years old on the date the crime was committed:

* * *

(3) When a defendant is convicted of any felony committed against:

* * *

(iii) a person physically handicapped at the time of the offense.

For purposes of this paragraph (b)(3), a physically handicapped person is a person who suffers from a permanent and disabling *physical characteristic*, resulting from disease, injury, functional disorder or congenital condition, *which impairs the ability of the person to avoid or prevent the commission of the offense.*" (Emphasis added.) Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(3)(iii).

█ The determination and imposition of a sentence falls within the sound discretion of the trial court, which constitutes the better forum for establishing a suitable sentence; hence, a court of review must give great deference to the trial court's determination and will not disturb it absent an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154; *People v. Baker* (1983), 114 Ill. App. 3d 803, 811.) However, penal statutes are to be strictly construed in favor of the accused, although the court must give effect to the legislative intent and must not read a statutory enactment rigidly to defeat that intent. *People v. Jordan* (1984), 103 Ill. 2d 192, 205.

█ In this case, the statute in force at the time of the offense required that, for an extended sentence to be imposed, the *physical* handicap must *impair the victim's ability to avoid or prevent the commission of the crime.* As we noted earlier, the defendant elected to be sentenced under the version of the law in effect on the date he committed the offense. (Ill. Rev. Stat. 1987, ch. 1, par. 1103; *People v. Cross* (1979), 77 Ill. 2d 396, 409.) Since 1986, the legislature has amended the relevant criminal statutes, but we do not need to address said changes as they have no bearing upon this opinion.

█ Analyzed separately, none of the victim's physical handicaps were shown to have impaired her ability to avoid or prevent the offense. Nor was it shown that an ordinary person could have reacted any differently than the victim did. As to the victim's speech impediment, she testified that she spoke to the defendant on the telephone, telling him not to come to her home and later telling him to "[g]et off [her]." The purpose of this testimony was to prove the element of force and lack of consent, not that she was handicapped. The State failed to raise any argument that the speech impediment was an impairment, as contemplated by the statute, or to prove that the im-

pediment would have made a difference in the victim's ability to avoid or prevent the crime. As to her hearing loss, the victim testified to hearing a telephone conversation, hearing the defendant talk, and hearing a noise that awoke her while she was in bed. The State did not attempt to prove that the hearing loss was an impairment which limited the victim's ability to avoid or prevent the crime, and it merely made a speculative argument that a person with normal hearing could have heard the defendant in sufficient time to get up and lock the door. We conclude that neither the victim's speech impediment nor her hearing impediment justified the imposition of an extended sentence.

It is apparent that the other handicap upon which the trial court based its imposition of an extended sentence was the victim's mental incapacity. (For the purposes of this opinion, we consider the victim to be developmentally disabled based on the definition of the term in section 1—106 of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1987, ch. 91½, par. 1—106).) Defendant argues that the statute refers only to *physical* handicap of a person suffering from a permanent and disabling *physical* characteristic and, as such, it does not encompass a mental handicap. Also, defendant argues that since the victim fully understood the nature of the conduct and complained of it promptly, she was not impaired by any possible mental handicap.

By its plain language, the statute does not include the mentally handicapped. (See *Maloney v. Bower* (1986), 113 Ill. 2d 473 (court interpreting a statute must give it its plain and ordinary meaning).) The legislature could have included in section 5—5—3.2(b)(3)(iii) of the Unified Code of Corrections, as it did, for example, in the Illinois Human Rights Act (Ill. Rev. Stat. 1987, ch. 68, par. 1—103(I)), statutory language which included both the physically and mentally handicapped. We must presume that the legislature was fully cognizant of the statutory differences between mental and physical handicaps and deliberately chose to omit any reference to mental handicaps in the relevant statutory language. (See *Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342.) Therefore, we find that the trial court's inclusion of the victim's mental incapacity in determining whether or not to impose an extended sentence was improper.

Having determined that no physical handicaps impaired the victim's ability to avoid or prevent the offense, and the trial court improperly took into account the victim's mental handicap, we find that the trial court abused its discretion in imposing an extended sentence upon defendant.

For the above reasons, the judgment of the circuit court is vacated, and the cause is remanded for a new sentencing hearing, wherein the court below shall impose a nonextended prison term upon defendant.

Reversed and remanded.

UNVERZAGT, P.J., and DUNN, J., concur.